UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| **FIRST HOME BANK,** <br> a Florida banking corporation, <br><br> *Plaintiff,* <br> v. <br><br> **THE ONE TECHNOLOGIES, LLC,** <br> a New York limited liability company, and <br> **POLINA LOZOVYI,** an individual, <br><br> *Defendants.* | CIVIL ACTION NO. <br><br><br> **VERIFIED COMPLAINT** |

Plaintiff, First Home bank, a Florida banking corporation ("Lender"), by and through its undersigned attorneys, by way of this Verified Complaint against defendants, The One Technologies, LLC, a New York limited liability company, and Polina Lozovyi, states:

## JURISDICTION AND VENUE

1.      This Court has jurisdiction pursuant to 28 U.S.C. § 1332(a), because the amount in controversy is in excess of Seventy-Five Thousand and 00/100 Dollars ($75,000.00), exclusive of interest and costs, and there is diversity between the parties.

2.      Venue is proper pursuant to 28 U.S.C. § 1391(a), because each of the Defendants reside and/or are located in the Eastern District of New York.

## PARTIES

3.      Lender is, and at all relevant times has been, a Florida banking corporation, with its principal place of business located at 700 Central Avenue, St. Petersburg, Florida 33701. Lender is not incorporated in any state other than Florida, nor does Lender have any locations outside of the State of Florida.

1

4.     Upon information and belief, Defendant, The One Technologies, LLC ("Borrower"), is a New York limited liability company, with its last known principal place of business located at 44 Court Street, Suite 1217, Brooklyn, New York 11201. Upon information and belief, Borrower is not incorporated in any state other than New York, nor does Borrower have any places of business outside of the State of New York.

5.     Upon information and belief, Defendant, Polina Lozovyi ("Guarantor"), is a natural person who is a citizen of the State of New York and who resides at 2848 Brighton 7th Street, 9F, Brooklyn, New York 11235.

## NATURE OF THE ACTION

6.     This is an action by Lender to enforce its rights in connection with a certain promissory note, security agreement, and guaranty, between Lender and Defendants, pursuant to which Lender made a loan in the original principal amount of Three Hundred Fifty Thousand and 00/100 Dollars ($350,000.00), and in which the principal amount of Three Hundred Thirty-Four Thousand Five Hundred Fifty-Two and 30/100 Dollars ($334,552.30), remains due.

## FACTUAL BACKGROUND

7.     On August 8, 2017, Borrower, made, executed, and delivered to Lender that certain promissory note in the original principal amount of Three Hundred Fifty Thousand and 00/100 Dollars ($350,000.00) ("Note"). A true and correct of the Note is attached hereto as **Exhibit "A"**.

8.     The Note is secured, in part, by that certain security agreement executed by Borrower, in favor of Lender, dated August 8, 2017 ("Security Agreement"), pursuant to which Borrower granted to Lender a security interest in, among other things, all equipment, inventory, accounts, instruments, chattel paper, general intangibles, and documents of Borrower

(collectively, "Collateral"). A true and correct copy of the Security Agreement is attached hereto as **Exhibit "B"**.

9.      Lender perfected its security interest in the Collateral by filing that certain UCC financing statement with the New York Secretary of State on July 17, 2017, as Filing No. 201707175855076 ("Financing Statement"). A true and correct copy of the Financing Statement is attached hereto as **Exhibit "C"**.

10.     Lender is not presently seeking an order for the repossession of the Collateral, but specifically restates and reaffirms its perfected security interest therein and reserves its rights in and to the Collateral.

11.     The Note is further secured by that certain guaranty executed by Guarantor, in favor of Lender, dated August 8, 2017 ("Guaranty"). A true and correct copy of the Guaranty is attached hereto as **Exhibit "D"**.

12.     Lender is the present owner of the Note, Security Agreement, Financing Statement, Guaranty, and all other loan documents associated therewith (collectively, "Loan Documents").

13.     Borrower failed to pay the installment payment due on the Note for May 5, 2018, which constitutes an event of default under the Loan Documents, and Lender elected to accelerate payment of all amounts due and owing under the Note. A true and correct copy of the Notice of Default and Demand Letters directed to Borrower and Guarantor is attached hereto as **Exhibit "E"**.

14.     Despite Lender's demands on Borrower and Guarantor to pay the principal, accrued interest, and other charges due and owing under the Note, Borrower and Guarantor have failed and refused, and continue to fail and refuse, to remit payment of the same.

15.     As of July 3, 2018, there was due and owing under the Note the total amount of Three Hundred Forty Thousand Two Hundred Sixty-Seven and 39/100 Dollars ($340,267.39), which consists of outstanding principal of Three Hundred Thirty-Four Thousand Five Hundred Fifty-Two and 30/100 Dollars ($334,552.30), accrued but unpaid interest to July 3, 2018, of Four Thousand Seven Hundred Forty-Seven and 89/100 Dollars ($4,747.89), which continues to accrue to the date of final judgment at the present daily rate of Seventy-One and 04/100 Dollars ($71.04), late charges of Eight Hundred Thirty-Two and 20/100 Dollars ($832.20), a site inspection fee of One Hundred Thirty-Five and 00/100 Dollars ($135.00), plus all costs of collection, including reasonable attorneys' fees, incurred by Lender.

16.     The Loan Documents provide that Borrower and Guarantor shall pay Lender's costs of collection including, but not limited to, reasonable attorneys' fees in the event that Borrower and/or Guarantor defaults in their respective obligations under the Loan Documents.

17.     Lender has retained the undersigned to enforce its rights and remedies under the above-described Loan Documents and to assist it in the collection of all amounts due and owing under the Note.

18.     All conditions precedent to the relief requested herein have been performed, satisfied, or otherwise been waived.

### FIRST CLAIM
#### (Breach of Contract)

19.     Lender refers to and realleges each of the foregoing allegations of this Complaint as if more fully set forth herein.

20.     Borrower defaulted under the terms of the Loan Documents by, among other things, Borrower's failure to remit the monthly payments due thereunder.

4

21.     As a result of the events of default, Lender elected to accelerate all amounts due and owing under the Note.

22.     Borrower has failed and refused, and continues to fail and refuse, to remit to Lender all amounts due and owing under the Note.

23.     Lender has performed all of its obligations under the Loan Documents.

24.     There is due and owing under the Note the total amount of Three Hundred Forty Thousand Two Hundred Sixty-Seven and 39/100 Dollars ($340,267.39), which consists of outstanding principal of Three Hundred Thirty-Four Thousand Five Hundred Fifty-Two and 30/100 Dollars ($334,552.30), accrued but unpaid interest to July 3, 2018, of Four Thousand Seven Hundred Forty-Seven and 89/100 Dollars ($4,747.89), which continues to accrue to the date of final judgment at the present daily rate of Seventy-One and 04/100 Dollars ($71.04), late charges of Eight Hundred Thirty-Two and 20/100 Dollars ($832.20), a site inspection fee of One Hundred Thirty-Five and 00/100 Dollars ($135.00), plus all costs of collection, including reasonable attorneys' fees, incurred by Lender for money lent to Borrower.

25.     Therefore, Lender is entitled to judgment against Borrower for all amounts due and owing under the Note.

## SECOND CLAIM
### (Breach of Guaranty)

26.     Lender refers to and realleges each of the foregoing allegations of this Complaint as if more fully set forth herein.

27.     Guarantor made, executed, and delivered the Guaranty to Lender, guarantying Borrower's payment and performance under the Note

28.     Despite Lender's demands on Guarantor to pay the principal, accrued interest, and other charges due and owing under the Note, Guarantor has failed and refused, and continues to fail and refuse, to remit payment of the same.

29.     The Guaranty provides that Guarantor shall pay Lender's costs of collection including, but not limited to, reasonable attorneys' fees in the event that Guarantor defaults in Guarantor's obligations under the Guaranty.

30.     Therefore, Lender is entitled to judgment against Guarantor for all amounts due and owing under the Note.

## THIRD CLAIM
### (Unjust Enrichment)

31.     Lender refers to and realleges each of the foregoing allegations of this Complaint as if more fully set forth herein.

32.     Borrower and Guarantor received the benefits from the loan referenced herein, and continue to retain the benefits arising therefrom, without repaying Lender for the same.

33.     Borrower and Guarantor have failed and refused, and continue to fail and refuse, to remit payment of the loan proceeds advanced under the Note.

34.     Borrower and Guarantor should not benefit from the aforementioned loan proceeds and benefits therefrom given that Borrower and Guarantor have failed to repay the obligations, as set forth in the Note, Guaranty, and other loan documents associated therewith.

35.     Borrower and Guarantor will continue to benefit by retaining said loan proceeds and benefits therefrom without repaying Lender for the same, which presents circumstances which would make it unjust to permit Borrower and Guarantor to retain said loan proceeds and the benefits associated therewith, without repaying the same pursuant to the terms and conditions of the Note and Guaranty.

36.     Borrower and Guarantor have been unjustly enriched, and injustice can only be avoided by ordering payment for damages by Borrower and Guarantor.

37.     Therefore, Lender is entitled to judgment against Borrower and Guarantor for all amounts due and owing under the Note.

## FOURTH CLAIM
### (Promissory Estoppel)

38.     Lender refers to and realleges each of the foregoing allegations of this Complaint as if more fully set forth herein.

39.     Borrower and Guarantor made numerous promises and representations to Lender including, without limitation, that Borrower and Guarantor would abide by the terms and conditions of the Note, Guaranty, and other Loan Documents associated therewith. These promises and representations were made with the full knowledge that Lender would rely thereon by entering the loan transaction with Borrower and Guarantor.

40.     Borrower and Guarantor knew, or should have known, that such promises and representations would induce action or forbearance of a definite and substantial character on Lender's behalf.

41.     Lender did reasonably rely upon the promises and representations of Borrower and Guarantor by entering into the Note, Guaranty, and other Loan Documents associated therewith.

42.     Injustice can only be avoided by estopping Borrower and Guarantor from denying the aforementioned promises and representations.

43.     All conditions precedent to the relief requested herein have been performed, satisfied, or otherwise been waived.

44.     Therefore, Lender is entitled to judgment against Borrower and Guarantor for all amounts due and owing under the Note.

**WHEREFORE** Plaintiff, First Home Bank, requests that judgment be rendered:

(a) in connection with the First Claim, against Defendant, The One Technologies, LLC, in favor of Plaintiff, First Home Bank, for the total amount due and owing under the Note of Three Hundred Forty Thousand Two Hundred Sixty-Seven and 39/100 Dollars ($340,267.39), which consists of outstanding principal of Three Hundred Thirty-Four Thousand Five Hundred Fifty-Two and 30/100 Dollars ($334,552.30), accrued but unpaid interest to July 3, 2018, of Four Thousand Seven Hundred Forty-Seven and 89/100 Dollars ($4,747.89), which continues to accrue to the date of final judgment at the present daily rate of Seventy-One and 04/100 Dollars ($71.04), late charges of Eight Hundred Thirty-Two and 20/100 Dollars ($832.20), a site inspection fee of One Hundred Thirty-Five and 00/100 Dollars ($135.00), plus all costs of collection, including reasonable attorneys' fees, incurred by Plaintiff, First Home Bank;

(b) in connection with the Second Claim, against Defendant, Polina Lozovyi, in favor of Plaintiff, First Home Bank, for the total amount due and owing under the Note of Three Hundred Forty Thousand Two Hundred Sixty-Seven and 39/100 Dollars ($340,267.39), which consists of outstanding principal of Three Hundred Thirty-Four Thousand Five Hundred Fifty-Two and 30/100 Dollars ($334,552.30), accrued but unpaid interest to July 3, 2018, of Four Thousand Seven Hundred Forty-Seven and 89/100 Dollars ($4,747.89), which continues to accrue to the date of final judgment at the present daily rate of Seventy-One and 04/100 Dollars ($71.04), late charges of

8

Eight Hundred Thirty-Two and 20/100 Dollars ($832.20), a site inspection fee of One Hundred Thirty-Five and 00/100 Dollars ($135.00), plus all costs of collection, including reasonable attorneys' fees, incurred by Plaintiff, First Home Bank;

(c) in connection with the Third Claim, against Defendants, The One Technologies, LLC and Polina Lozovyi, jointly and severally, in favor of Plaintiff, First Home Bank, for the total amount due and owing under the Note of Three Hundred Forty Thousand Two Hundred Sixty-Seven and 39/100 Dollars ($340,267.39), which consists of outstanding principal of Three Hundred Thirty-Four Thousand Five Hundred Fifty-Two and 30/100 Dollars ($334,552.30), accrued but unpaid interest to July 3, 2018, of Four Thousand Seven Hundred Forty-Seven and 89/100 Dollars ($4,747.89), which continues to accrue to the date of final judgment at the present daily rate of Seventy-One and 04/100 Dollars ($71.04), late charges of Eight Hundred Thirty-Two and 20/100 Dollars ($832.20), plus a site inspection fee of One Hundred Thirty-Five and 00/100 Dollars ($135.00);

(d) in connection with the Fourth Claim, against Defendants, The One Technologies, LLC and Polina Lozovyi, jointly and severally, in favor of Plaintiff, First Home Bank, for the total amount due and owing under the Note of Three Hundred Forty Thousand Two Hundred Sixty-Seven and 39/100 Dollars ($340,267.39), which consists of outstanding principal of Three Hundred Thirty-Four Thousand Five Hundred Fifty-Two and 30/100 Dollars ($334,552.30), accrued but unpaid interest to July 3, 2018, of Four Thousand Seven Hundred Forty-Seven and 89/100 Dollars ($4,747.89), which continues to accrue to the date of final judgment at the present daily rate of Seventy-One and 04/100 Dollars ($71.04), late charges of Eight Hundred

Thirty-Two and 20/100 Dollars ($832.20), plus a site inspection fee of One Hundred

Thirty-Five and 00/100 Dollars ($135.00); and

(e) for such further and other relief as the Court deems just and proper.

Dated: July 18, 2018                    **McELROY, DEUTSCH, MULVANEY**
                                        **& CARPENTER, LLP**


By: /s/Eric R. Perkins
Eric R. Perkins
225 Liberty Street, 36th Floor
New York, New York 10281
Telephone: (973) 622-7711
eperkins@mdmc-law.com
**Attorneys for First Home Bank**

## VERIFYING AFFIDAVIT

STATE OF FLORIDA     )
                                   ) ss.

COUNTY OF PINELLAS   )

        JERI D. McCALL, of full age, being duly sworn, upon her oath, deposes and says:

        1.     I am the Vice President, SBA Quality Control/Liquidation Manager, of Plaintiff, First Home Bank, a Florida banking corporation, and I am fully familiar with the facts of this case.

        2.     I have read the foregoing Verified Complaint and all the allegations contained therein. Except as to allegations alleged upon information and belief, which allegations I believe to be true, all the allegations in the Verified Complaint are true based on my personal knowledge, from public records, the records of Plaintiff, or information provided to Plaintiff by Defendants, The One Technologies, LLC and Polina Lozovyi.

                                               _____
                                               JERI D. McCALL

Sworn and subscribed to before me
this _5ᵗʰ_ day of July, 2018.

_____
NOTARY PUBLIC

Notary Public State of Florida
John Terrana
My Commission GG 108961
Expires 05/29/2021

DocuSign Envelope ID: A157BBFD-1080-4181-A7E7-1C24E8FD2AF7

# Exhibit A

| LOAN NUMBER | LOAN NAME | ACCT. NUMBER | NOTE DATE | INITIALS |
|---|---|---|---|---|
| 9613445009 | The One Technologies, LLC | | 08/08/17 | SMB |
| **NOTE AMOUNT** | **INDEX (w/Margin)** | **RATE** | **MATURITY DATE** | **LOAN PURPOSE** |
| $350,000.00 | Wall Street Journal Prime plus 2.750% | 7.000% | 08/08/27 | Commercial |
| | | **Creditor Use Only** | | |

# PROMISSORY NOTE
## (Commercial - Single Advance)

**DATE AND PARTIES.** The date of this Promissory Note (Note) is August 8, 2017. The parties and their addresses are:

**LENDER:**
> **FIRST HOME BANK, A FLORIDA BANKING CORPORATION**
> 700 CENTRAL AVE
> ST PETERSBURG, FL  33701
> Telephone: (727) 394-2265

**BORROWER:**
> **THE ONE TECHNOLOGIES, LLC**
> a New York Limited Liability Company
> 44 Court Street Suite 1217
> Brooklyn, NY 11201

**1. DEFINITIONS.**  As used in this Note, the terms have the following meanings:

**A. Pronouns.**  The pronouns "I," "me," and "my" refer to each Borrower signing this Note, individually and together with their heirs, successors and assigns, and each other person or legal entity (including guarantors, endorsers, and sureties) who agrees to pay this Note. "You" and "Your" refer to the Lender, any participants or syndicators, successors and assigns, or any person or company that acquires an interest in the Loan.

**B. Note.**  Note refers to this document, and any extensions, renewals, modifications and substitutions of this Note.

**C. Loan.**  Loan refers to this transaction generally, including obligations and duties arising from the terms of all documents prepared or submitted for this transaction such as applications, security agreements, disclosures or notes, and this Note.

**D. Loan Documents.**  Loan Documents refer to all the documents executed as a part of or in connection with the Loan.

**E. Property.**  Property is any property, real, personal or intangible, that secures my performance of the obligations of this Loan.

**F. Percent.**  Rates and rate change limitations are expressed as annualized percentages.

**G. Dollar Amounts.**  All dollar amounts will be payable in lawful money of the United States of America.

**2. PROMISE TO PAY.**  For value received, I promise to pay you or your order, at your address, or at such other location as you may designate, the principal sum of **$350,000.00 (Principal)** plus interest from August 8, 2017 on the unpaid Principal balance until this Note matures or this obligation is accelerated.

**3. INTEREST.**  Interest will accrue on the unpaid Principal balance of this Note at the rate of **7.000 percent (Interest Rate)** until October 1, 2017, after which time it may change as described in the Variable Rate subsection.

**A. Interest After Default.**  If you declare a default under the terms of the Loan, including for failure to pay in full at maturity, you may increase the Interest Rate otherwise payable as described in this section.  In such event, interest will accrue on the unpaid Principal balance of this Note at the Interest Rate in effect from time to time under the terms of the Loan, until paid in full.

**B. Maximum Interest Amount.**  Any amount assessed or collected as interest under the terms of this Note will be limited to the maximum lawful amount of interest allowed by applicable law.  Amounts collected in excess of the maximum lawful amount will be applied first to the unpaid Principal balance.  Any remainder will be refunded to me.

**C. Accrual.**  Interest accrues using an Actual/365 days counting method.

**D. Variable Rate.**  The Interest Rate may change during the term of this transaction.

> **(1) Index.**  Beginning with the first Change Date, the Interest Rate will be based on the following index:  the base rate on corporate loans posted by at least 70% of the 10 largest U.S. banks known as the Wall Street Journal U.S. Prime Rate.

> The Current Index is the most recent index figure available on each Change Date.  You do not guaranty by selecting this Index, or the margin, that the Interest Rate on this Note will be the same rate you charge on any other loans or class of loans you make to me or other borrowers.  If this Index is no longer available, you will substitute a similar index.  You will give me notice of your choice.

DocuSign Envelope ID: A157BBFD-1080-4181-A7E7-1C24E8FD2AF7

# Exhibit A

**(2) Change Date.** Each date on which the Interest Rate may change is called a Change Date. The Interest Rate may change October 1, 2017 and every calendar quarter thereafter.

**(3) Calculation Of Change.** On each Change Date you will calculate the Interest Rate, which will be the Current Index plus 2.750 percent. Subject to any limitations, this will be the Interest Rate until the next Change Date. The new Interest Rate will become effective on each Change Date. The Interest Rate and other charges on this Note will never exceed the highest rate or charge allowed by law for this Note.

**(4) Effect Of Variable Rate.** A change in the Interest Rate will have the following effect on the payments: The amount of scheduled payments will change.

**4. REMEDIAL CHARGES.** In addition to interest or other finance charges, I agree that I will pay these additional fees based on my method and pattern of payment. Additional remedial charges may be described elsewhere in this Note.

**A. Late Charge.** If a payment is more than 10 days late, I will be charged **5.000** percent of the Unpaid Portion of Payment. I will pay this late charge promptly but only once for each late payment.

**B. Returned Check Charge.** I agree to pay a fee not to exceed $25.00 for each check, negotiable order of withdrawal or draft I issue in connection with the Loan that is returned because it has been dishonored.

**5. PAYMENT.** I agree to pay this Note in **120** payments. A payment of **$4,062.31** will be due September 5, 2017, and on the 5th day of each month thereafter. I will make 3 scheduled payments of this amount. The scheduled payment amount may then change every 3 payments thereafter. Changes in the Interest Rate will not affect the scheduled payment amount during these periods. With each scheduled payment change the payment amount will be adjusted to reflect changes in the Interest Rate during the remaining term of this Note. In addition, changes to the scheduled payment amounts are subject to changes in the Interest Rate as described in the Variable Rate subsection of this Note. A final payment of the entire unpaid balance of Principal and interest will be due August 8, 2027.

Payments will be rounded down to the nearest $.01. With the final payment I also agree to pay any additional fees or charges owing and the amount of any advances you have made to others on my behalf. Payments scheduled to be paid on the 29th, 30th or 31st day of a month that contains no such day will, instead, be made on the last day of such month.

Each payment I make on this Note will be applied first to interest that is due, then to principal that is due, and finally to any charges that I owe other than principal and interest. If you and I agree to a different application of payments, we will describe our agreement on this Note. You may change how payments are applied in your sole discretion without notice to me. The actual amount of my final payment will depend on my payment record.

**6. PREPAYMENT.** I may prepay this Loan under the following terms and conditions. Borrower may prepay 20 percent or less of the unpaid principal balance at any time without notice. If Borrower prepays more than 20 percent and the Loan has been sold on the secondary market, Borrower must:   (a) Give Lender written notice;  (b) Pay all accrued interest; and  (c) If the prepayment is received less than 21 days from the date Lender received the notice, pay an amount equal to 21 days interest from the date lender received the notice, less any interest accrued during the 21 days and paid under b. of this paragraph. If Borrower does not prepay within 30 days from the date Lender received the notice, Borrower must give Lender a new notice..

**7. LOAN PURPOSE.** The purpose of this Loan is FOR DEBT REFINANCE AND WORKING CAPITAL.

**8. ADDITIONAL TERMS.** SBA PROVISIONS - When SBA is the holder, this Note will be interpreted and enforced under federal law, including SBA regulations. Lender or SBA may use state or local procedures for filing papers, recording documents, giving notice, foreclosing liens, and other purposes. By using such procedures, SBA does not waive any federal immunity from state or local control, penalty, tax, or liability. As to this Note, Borrower may not claim or assert against SBA any local or state law to deny any obligation, defeat any claims of SBA, or preempt federal law.

**9. SECURITY.** The Loan is secured by separate security instruments prepared together with this Note as follows:

| Document Name | Parties to Document |
|---|---|
| Security Agreement - The One Technologies, LLC | The One Technologies, LLC |

**10. LIMITATIONS ON CROSS-COLLATERALIZATION.** The cross-collateralization clause on any existing or future loan, but not including this Loan, is void and ineffective as to this Loan, including any extension or refinancing.

The Loan is not secured by a previously executed security instrument if a non-possessory, non-purchase money security interest is created in "household goods" in connection with a "consumer loan," as those terms are defined by federal law governing unfair and deceptive credit practices. The Loan is not secured by a previously executed security instrument if you fail to fulfill any necessary requirements or fail to conform to any limitations of the Real Estate Settlement Procedures Act, (Regulation X), that are required for loans secured by the Property or if, as a result, the other debt would become subject to Section 670 of the John Warner National Defense Authorization Act for Fiscal Year 2007.

The Loan is not secured by a previously executed security instrument if you fail to fulfill any necessary requirements or fail to conform to any limitations of the Truth in Lending Act, (Regulation Z), that are required for loans secured by the Property.

**11. DEFAULT.** I will be in default if any of the following events (known separately and collectively as an Event of Default) occur:

**A. Payments.** I fail to make a payment in full when due.

**B. Insolvency or Bankruptcy.** The death, dissolution or insolvency of, appointment of a receiver by or on behalf of, application of any debtor relief law, the assignment for the benefit of creditors by or on behalf of, the voluntary or involuntary termination of existence by, or

DocuSign Envelope ID: A157BBFD-1080-4181-A7E7-1C24E8FD2AF7

# Exhibit A

the commencement of any proceeding under any present or future federal or state insolvency, bankruptcy, reorganization, composition or debtor relief law by or against me or any co-signer, endorser, surety or guarantor of this Note or any other obligations I have with you.

**C. Business Termination.** I merge, dissolve, reorganize, end my business or existence, or a partner or majority owner dies or is declared legally incompetent.

**D. New Organizations.** Without your written consent, I organize, merge into, or consolidate with an entity; acquire all or substantially all of the assets of another; materially change the legal structure, management, ownership or financial condition; or effect or enter into a domestication, conversion or interest exchange.

**E. Failure to Perform.** I fail to perform any condition or to keep any promise or covenant of this Note.

**F. Other Documents.** A default occurs under the terms of any other Loan Document.

**G. Other Agreements.** I am in default on any other debt or agreement I have with you.

**H. Misrepresentation.** I make any verbal or written statement or provide any financial information that is untrue, inaccurate, or conceals a material fact at the time it is made or provided.

**I. Judgment.** I fail to satisfy or appeal any judgment against me.

**J. Forfeiture.** The Property is used in a manner or for a purpose that threatens confiscation by a legal authority.

**K. Name Change.** I change my name or assume an additional name without notifying you before making such a change.

**L. Property Transfer.** I transfer all or a substantial part of my money or property.

**M. Property Value.** You determine in good faith that the value of the Property has declined or is impaired.

**N. Material Change.** Without first notifying you, there is a material change in my business, including ownership, management, and financial conditions.

**O. Insecurity.** You determine in good faith that a material adverse change has occurred in my financial condition from the conditions set forth in my most recent financial statement before the date of this Note or that the prospect for payment or performance of the Loan is impaired for any reason.

**12. DUE ON SALE OR ENCUMBRANCE.** You may, at your option, declare the entire balance of this Note to be immediately due and payable upon the creation of, or contract for the creation of, any lien, encumbrance, transfer or sale of all or any part of the Property. This right is subject to the restrictions imposed by federal law, as applicable.

**13. WAIVERS AND CONSENT.** To the extent not prohibited by law, I waive protest, presentment for payment, demand, notice of acceleration, notice of intent to accelerate and notice of dishonor.

**A. Additional Waivers By Borrower.** In addition, I, and any party to this Note and Loan, to the extent permitted by law, consent to certain actions you may take, and generally waive defenses that may be available based on these actions or based on the status of a party to this Note.

(1) You may renew or extend payments on this Note, regardless of the number of such renewals or extensions.

(2) You may release any Borrower, endorser, guarantor, surety, accommodation maker or any other co-signer.

(3) You may release, substitute or impair any Property securing this Note.

(4) You, or any institution participating in this Note, may invoke your right of set-off.

(5) You may enter into any sales, repurchases or participations of this Note to any person in any amounts and I waive notice of such sales, repurchases or participations.

(6) I agree that any of us signing this Note as a Borrower is authorized to modify the terms of this Note or any instrument securing, guarantying or relating to this Note.

(7) I agree that you may inform any party who guarantees this Loan of any Loan accommodations, renewals, extensions, modifications, substitutions or future advances.

**B. No Waiver By Lender.** Your course of dealing, or your forbearance from, or delay in, the exercise of any of your rights, remedies, privileges or right to insist upon my strict performance of any provisions contained in this Note, or any other Loan Document, shall not be construed as a waiver by you, unless any such waiver is in writing and is signed by you.

**14. REMEDIES.** After I default, you may at your option do any one or more of the following.

**A. Acceleration.** You may make all or any part of the amount owing by the terms of this Note immediately due.

**B. Sources.** You may use any and all remedies you have under state or federal law or in any Loan Document.

**C. Insurance Benefits.** You may make a claim for any and all insurance benefits or refunds that may be available on my default.

**D. Payments Made On My Behalf.** Amounts advanced on my behalf will be immediately due and may be added to the balance owing under the terms of this Note, and accrue interest at the highest post-maturity interest rate.

**E. Set-Off.** You may use the right of set-off. This means you may set-off any amount due and payable under the terms of this Note against any right I have to receive money from you.

My right to receive money from you includes any deposit or share account balance I have with you; any money owed to me on an item presented to you or in your possession for collection or exchange; and any repurchase agreement or other non-deposit obligation. "Any amount due and payable under the terms of this Note" means the total amount to which you are entitled to demand payment under the terms of this Note at the time you set-off.

DocuSign Envelope ID: A157BBFD-1080-4181-A7E7-1C24E8FD2AF7

# Exhibit A

Subject to any other written contract, if my right to receive money from you is also owned by someone who has not agreed to pay this Note, your right of set-off will apply to my interest in the obligation and to any other amounts I could withdraw on my sole request or endorsement.

Your right of set-off does not apply to an account or other obligation where my rights arise only in a representative capacity. It also does not apply to any Individual Retirement Account or other tax-deferred retirement account. In addition, your set-off rights do not extend to funds in any account into which I have deposited social security or supplemental security income payments by way of direct deposit. Your right of set-off applies without prior demand, but you must send me notice of and the reasons for the set-off when you exercise your right.

You will not be liable for the dishonor of any check when the dishonor occurs because you set-off against any of my accounts. I agree to hold you harmless from any such claims arising as a result of your exercise of your right of set-off.

**F. Waiver.** Except as otherwise required by law, by choosing any one or more of these remedies you do not give up your right to use any other remedy. You do not waive a default if you choose not to use a remedy. By electing not to use any remedy, you do not waive your right to later consider the event a default and to use any remedies if the default continues or occurs again.

**15. COLLECTION EXPENSES AND ATTORNEYS' FEES.** On or after the occurrence of an Event of Default, to the extent permitted by law, I agree to pay all expenses of collection, enforcement or protection of your rights and remedies under this Note or any other Loan Document. Expenses include, but are not limited to, reasonable attorneys' fees, court costs, and other legal expenses. These expenses are due and payable immediately. If not paid immediately, these expenses will bear interest from the date of payment until paid in full at the highest interest rate in effect as provided for in the terms of this Note. All fees and expenses will be secured by the Property I have granted to you, if any. In addition, to the extent permitted by the United States Bankruptcy Code, I agree to pay the reasonable attorneys' fees incurred by you to protect your rights and interests in connection with any bankruptcy proceedings initiated by or against me.

**16. COMMISSIONS.** I understand and agree that you (or your affiliate) will earn commissions or fees on any insurance products, and may earn such fees on other services that I buy through you or your affiliate.

**17. WARRANTIES AND REPRESENTATIONS.** I make to you the following warranties and representations which will continue as long as this Note is in effect:

**A. Power.** I am duly organized, and validly existing and in good standing in all jurisdictions in which I operate. I have the power and authority to enter into this transaction and to carry on my business or activity as it is now being conducted and, as applicable, am qualified to do so in each jurisdiction in which I operate.

**B. Authority.** The execution, delivery and performance of this Note and the obligation evidenced by this Note are within my powers, have been duly authorized, have received all necessary governmental approval, will not violate any provision of law, or order of court or governmental agency, and will not violate any agreement to which I am a party or to which I am or any of my Property is subject.

**C. Name and Place of Business.** Other than previously disclosed in writing to you I have not changed my name or principal place of business within the last 10 years and have not used any other trade or fictitious name. Without your prior written consent, I do not and will not use any other name and will preserve my existing name, trade names and franchises.

**18. INSURANCE.** I agree to obtain the insurance described in this Loan Agreement.

**A. Property Insurance.** I will insure or retain insurance coverage on the Property and abide by the insurance requirements of any security instrument securing the Loan.

**B. Insurance Warranties.** I agree to purchase any insurance coverages that are required, in the amounts you require, as described in this or any other documents I sign for the Loan. I will provide you with continuing proof of coverage. I will buy or provide insurance from a firm licensed to do business in the State where the Property is located. If I buy or provide the insurance from someone other than you, the firm will be reasonably acceptable to you. I will have the insurance company name you as loss payee on any insurance policy. You will apply the insurance proceeds toward what I owe you on the outstanding balance. I agree that if the insurance proceeds do not cover the amounts I still owe you, I will pay the difference. I will keep the insurance until all debts secured by this agreement are paid. If I want to buy the insurance from you, I have signed a separate statement agreeing to this purchase.

**19. APPLICABLE LAW.** This Note is governed by the laws of New York, the United States of America, and to the extent required, by the laws of the jurisdiction where the Property is located, except to the extent such state laws are preempted by federal law. In the event of a dispute, the exclusive forum, venue and place of jurisdiction will be in Florida, unless otherwise required by law.

**20. JOINT AND INDIVIDUAL LIABILITY AND SUCCESSORS.** My obligation to pay the Loan is independent of the obligation of any other person who has also agreed to pay it. You may sue me alone, or anyone else who is obligated on the Loan, or any number of us together, to collect the Loan. Extending the Loan or new obligations under the Loan, will not affect my duty under the Loan and I will still be obligated to pay the Loan. This Note shall inure to the benefit of and be enforceable by you and your successors and assigns and shall be binding upon and enforceable against me and my personal representatives, successors, heirs and assigns.

**21. AMENDMENT, INTEGRATION AND SEVERABILITY.** This Note may not be amended or modified by oral agreement. No amendment or modification of this Note is effective unless made in writing and executed by you and me. This Note and the other Loan Documents are the complete and final expression of the agreement. If any provision of this Note is unenforceable, then the unenforceable provision will be severed and the remaining provisions will still be enforceable. No present or future agreement securing any other debt I owe you will secure the payment of this Loan if, with respect to this loan, you fail to fulfill any necessary requirements or fail to conform to any limitations of the Truth in Lending Act (Regulation Z) or the Real Estate Settlement Procedures Act (Regulation X) that are required for loans secured by the Property or if, as a result, this Loan would become subject to Section 670 of the John Warner National Defense Authorization Act for Fiscal Year 2007.

**22. INTERPRETATION.** Whenever used, the singular includes the plural and the plural includes the singular. The section headings are for convenience only and are not to be used to interpret or define the terms of this Note.

DocuSign Envelope ID: A157BBFD-1080-4181-A7E7-1C24E8FD2AF7

# Exhibit A

**23. NOTICE, FINANCIAL REPORTS AND ADDITIONAL DOCUMENTS.** Unless otherwise required by law, any notice will be given by delivering it or mailing it by first class mail to the appropriate party's address listed in the DATE AND PARTIES section, or to any other address designated in writing. Notice to one Borrower will be deemed to be notice to all Borrowers. I will inform you in writing of any change in my name, address or other application information. I will provide you any correct and complete financial statements or other information you request. I agree to sign, deliver, and file any additional documents or certifications that you may consider necessary to perfect, continue, and preserve my obligations under this Loan and to confirm your lien status on any Property. Time is of the essence.

**24. CREDIT INFORMATION.** I agree to supply you with whatever information you reasonably request. You will make requests for this information without undue frequency, and will give me reasonable time in which to supply the information.

**25. ERRORS AND OMISSIONS.** I agree, if requested by you, to fully cooperate in the correction, if necessary, in the reasonable discretion of you of any and all loan closing documents so that all documents accurately describe the loan between you and me. I agree to assume all costs including by way of illustration and not limitation, actual expenses, legal fees and marketing losses for failing to reasonably comply with your requests within thirty (30) days.

**26. SIGNATURES.** By signing, I agree to the terms contained in this Note. I also acknowledge receipt of a copy of this Note.

**BORROWER:**

The One Technologies, LLC

DocuSigned by:

By _POLINA LOZOVYI_____ Date____8/8/2017_____
POLINA LOZOVYI, Managing Member

DocuSign Envelope ID: A157BBFD-1080-4181-A7E7-1C24E8FD2AF7

# Exhibit B
## SECURITY AGREEMENT

**DATE AND PARTIES.** The date of this Security Agreement (Agreement) is August 8, 2017. The parties and their addresses are:

**SECURED PARTY:**
**FIRST HOME BANK, A FLORIDA BANKING CORPORATION**
700 CENTRAL AVE
ST PETERSBURG, FL 33701

**DEBTOR:**
**THE ONE TECHNOLOGIES, LLC**
a New York Limited Liability Company
44 Court Street Suite 1217
Brooklyn, NY 11201

**Definitions.** For the purposes of this document, the following terms have the following meanings.

"Loan" refers to this transaction generally, including obligations and duties arising from the terms of all documents prepared or submitted for this transaction.

The pronouns "you" and "your" refer to the Secured Party. The pronouns "I," "me" and "my" refer to each person or entity signing this Agreement as Debtor and agreeing to give the Property described in this Agreement as security for the Secured Debts.

**1. SMALL BUSINESS ADMINISTRATION.** The Secured Debts secured by this lien were made under a United States Small Business Administration (SBA) nationwide program which uses tax dollars to assist small business owners. If the United States is seeking to enforce this Agreement, then under SBA regulations:

    **A.** When SBA is the holder of the Note, this Agreement and all documents evidencing or securing the Secured Debts will be construed in accordance with federal law.

    **B.** Lender or SBA may use local or state procedures for purposes such as filing papers, recording documents, giving notice, foreclosing liens, and other purposes. By using these procedures, SBA does not waive any federal immunity from local or state control, penalty, tax or liability. No Borrower or Guarantor may claim or assert against SBA any local or state law to deny any obligation of Borrower, or defeat any claim of SBA with respect to the Secured Debts.

Any clause in this Agreement requiring arbitration is not enforceable when SBA is the holder of the Note secured by this Agreement.

**2. SECURED DEBTS.** The term "Secured Debts" includes and this Agreement will secure each of the following:

    **A. Specific Debts.** The following debts and all extensions, renewals, refinancings, modifications and replacements. A promissory note or other agreement, No. 9613445009, dated August 8, 2017, from me to you, in the amount of $350,000.00.

    **B. Sums Advanced.** All sums advanced and expenses incurred by you under the terms of this Agreement.

Loan Documents refer to all the documents executed in connection with the Secured Debts.

**3. LIMITATIONS ON CROSS-COLLATERALIZATION.** The cross-collateralization clause on any existing or future loan, but not including this Loan, is void and ineffective as to this Loan, including any extension or refinancing.

The Loan is not secured by a previously executed security instrument if a non-possessory, non-purchase money security interest is created in "household goods" in connection with a "consumer loan," as those terms are defined by federal law governing unfair and deceptive credit practices. The Loan is not secured by a previously executed security instrument if you fail to fulfill any necessary requirements or fail to conform to any limitations of the Real Estate Settlement Procedures Act, (Regulation X), that are required for loans secured by the Property or if, as a result, the other debt would become subject to Section 670 of the John Warner National Defense Authorization Act for Fiscal Year 2007.

The Loan is not secured by a previously executed security instrument if you fail to fulfill any necessary requirements or fail to conform to any limitations of the Truth in Lending Act, (Regulation Z), that are required for loans secured by the Property.

**4. SECURITY INTEREST.** To secure the payment and performance of the Secured Debts, I grant you a security interest in all of the Property described in this Agreement that I own or have sufficient rights in which to transfer an interest, now or in the future, wherever the Property is or will be located, and all proceeds and products from the Property (including, but not limited to, all parts, accessories, repairs, replacements, improvements, and accessions to the Property). Property is all the collateral given as security for the Secured Debts and described in this Agreement, and includes all obligations that support the payment or performance of the Property. "Proceeds" includes cash proceeds, non-cash proceeds and anything acquired upon the sale, lease, license, exchange, or other disposition of the Property; any rights and claims arising from the Property; and any collections and distributions on account of the Property.

This Agreement remains in effect until terminated in writing, even if the Secured Debts are paid and you are no longer obligated to advance funds to me under any loan or credit agreement.

**5. PROPERTY DESCRIPTION.** The Property is described as follows:

    **A. All Assets.** All present and future right, title and interest in and to any and all personal property of the Debtor, whether such property is now existing or hereafter created, acquired or arising and wherever located from time to time, including without limitation, the following categories of property: goods (including inventory, equipment, fixtures, farm products and any accessions thereto), instruments (including

DocuSign Envelope ID: A157BBFD-1080-4181-A7E7-1C24E8FD2AF7

# Exhibit B

promissory notes), documents, accounts (including health-care-insurance receivables), chattel paper (whether tangible or electronic), deposit accounts, letter-of-credit rights (whether or not the letter-of-credit is evidenced by a writing), commercial tort claims, securities and all other investment property, general intangibles (including payment intangibles and software), all supporting obligations and all proceeds, products, additions, accessions, substitutions and replacements of the foregoing property.

Any term used herein as is defined by the Uniform Commercial Code and further as modified or amended by the laws of the jurisdiction which governs this transaction.

**6. WARRANTIES AND REPRESENTATIONS.** I make to you the following warranties and representations which will continue as long as this Agreement is in effect:

**A. Power.** I am duly organized, and validly existing and in good standing in all jurisdictions in which I operate. I have the power and authority to enter into this transaction and to carry on my business or activity as it is now being conducted and, as applicable, am qualified to do so in each jurisdiction in which I operate.

**B. Authority.** The execution, delivery and performance of this Agreement and the obligation evidenced by this Agreement are within my powers, have been duly authorized, have received all necessary governmental approval, will not violate any provision of law, or order of court or governmental agency, and will not violate any agreement to which I am a party or to which I am or any of my property is subject.

**C. Name and Location.** My name indicated in the DATE AND PARTIES section is my exact legal name. I am located at the address indicated in the DATE AND PARTIES section. I will provide verification of registration and location upon your request. I will provide you with at least 30 days notice prior to any change in my name, address, or state of organization or registration.

**D. Business Name.** Other than previously disclosed in writing to you I have not changed my name or principal place of business within the last 10 years and have not used any other trade or fictitious name. Without your prior written consent, I do not and will not use any other name and will preserve my existing name, trade names and franchises.

**E. Ownership of Property.** I represent that I own all of the Property. Your claim to the Property is ahead of the claims of any other creditor, except as disclosed in writing to you prior to any advance on the Secured Debts. I represent that I am the original owner of the Property and, if I am not, that I have provided you with a list of prior owners of the Property.

**7. DUTIES TOWARD PROPERTY.**

**A. Protection of Secured Party's Interest.** I will defend the Property against any other claim. I agree to do whatever you require to protect your security interest and to keep your claim in the Property ahead of the claims of other creditors. I will not do anything to harm your position.

I will keep books, records and accounts about the Property and my business in general. I will let you examine these and make copies at any reasonable time. I will prepare any report or accounting you request which deals with the Property.

**B. Use, Location, and Protection of the Property.** I will keep the Property in my possession and in good repair. I will use it only for commercial purposes. I will not change this specified use without your prior written consent. You have the right of reasonable access to inspect the Property and I will immediately inform you of any loss or damage to the Property. I will not cause or permit waste to the Property.

I will keep the Property at my address listed in the DATE AND PARTIES section unless we agree I may keep it at another location. If the Property is to be used in other states, I will give you a list of those states. The location of the Property is given to aid in the identification of the Property. It does not in any way limit the scope of the security interest granted to you. I will notify you in writing and obtain your prior written consent to any change in location of any of the Property. I will not use the Property in violation of any law. I will notify you in writing prior to any change in my address, name or, if an organization, any change in my identity or structure.

Until the Secured Debts are fully paid and this Agreement is terminated, I will not grant a security interest in any of the Property without your prior written consent. I will pay all taxes and assessments levied or assessed against me or the Property and provide timely proof of payment of these taxes and assessments upon request.

**C. Selling, Leasing or Encumbering the Property.** I will not sell, offer to sell, lease, or otherwise transfer or encumber the Property without your prior written permission. Any disposition of the Property contrary to this Agreement will violate your rights. Your permission to sell the Property may be reasonably withheld without regard to the creditworthiness of any buyer or transferee. I will not permit the Property to be the subject of any court order affecting my rights to the Property in any action by anyone other than you. If the Property includes chattel paper or instruments, either as original collateral or as proceeds of the Property, I will note your security interest on the face of the chattel paper or instruments.

**8. INSURANCE.** I agree to keep the Property insured against the risks reasonably associated with the Property. I will maintain this insurance in the amounts you require. This insurance will last until the Property is released from this Agreement. I may choose the insurance company, subject to your approval, which will not be unreasonably withheld.

I will have the insurance company name you as loss payee on any insurance policy. I will give you and the insurance company immediate notice of any loss. You may apply the insurance proceeds toward what is owed on the Secured Debts. You may require added security as a condition of permitting any insurance proceeds to be used to repair or replace the Property.

If you acquire the Property in damaged condition, my right to any insurance policies and proceeds will pass to you to the extent of the Secured Debts.

I will immediately notify you of cancellation or termination of insurance. If I fail to keep the Property insured, you may obtain insurance to protect your interest in the Property and I will pay for the insurance on your demand. You may demand that I pay for the insurance all at once, or you may add the insurance premiums to the balance of the Secured Debts and charge interest on it at the rate that applies to the Secured Debts. This insurance may include lesser or greater coverages than originally required of me, may be written by a company other than one I would choose, and may be written at a higher rate than I could obtain if I purchased the insurance. I acknowledge and agree that you or one of your affiliates may receive commissions on the purchase of this insurance.

DocuSign Envelope ID: A157BBFD-1080-4181-A7E7-1C24E8FD2AF7

# Exhibit B

**9. COLLECTION RIGHTS OF THE SECURED PARTY.** Account Debtor means the person who is obligated on an account, chattel paper, or general intangible. I authorize you to notify my Account Debtors of your security interest and to deal with the Account Debtors' obligations at your discretion. You may enforce the obligations of an Account Debtor, exercising any of my rights with respect to the Account Debtors' obligations to make payment or otherwise render performance to me, including the enforcement of any security interest that secures such obligations. You may apply proceeds received from the Account Debtors to the Secured Debts or you may release such proceeds to me.

I specifically and irrevocably authorize you to exercise any of the following powers at my expense, without limitation, until the Secured Debts are paid in full:

    **A.** demand payment and enforce collection from any Account Debtor or Obligor by suit or otherwise.

    **B.** enforce any security interest, lien or encumbrance given to secure the payment or performance of any Account Debtor or any obligation constituting Property.

    **C.** file proofs of claim or similar documents in the event of bankruptcy, insolvency or death of any person obligated as an Account Debtor.

    **D.** compromise, release, extend, or exchange any indebtedness of an Account Debtor.

    **E.** take control of any proceeds of the Account Debtors' obligations and any returned or repossessed goods.

    **F.** endorse all payments by any Account Debtor which may come into your possession as payable to me.

    **G.** deal in all respects as the holder and owner of the Account Debtors' obligations.

**10. AUTHORITY TO PERFORM.** I authorize you to do anything you deem reasonably necessary to protect the Property, and perfect and continue your security interest in the Property. If I fail to perform any of my duties under this Agreement or any other Loan Document, you are authorized, without notice to me, to perform the duties or cause them to be performed.

These authorizations include, but are not limited to, permission to:

    **A.** pay and discharge taxes, liens, security interests or other encumbrances at any time levied or placed on the Property.

    **B.** pay any rents or other charges under any lease affecting the Property.

    **C.** order and pay for the repair, maintenance and preservation of the Property.

    **D.** file any financing statements on my behalf and pay for filing and recording fees pertaining to the Property.

    **E.** place a note on any chattel paper indicating your interest in the Property.

    **F.** take any action you feel necessary to realize on the Property, including performing any part of a contract or endorsing it in my name.

    **G.** handle any suits or other proceedings involving the Property in my name.

    **H.** prepare, file, and sign my name to any necessary reports or accountings.

    **I.** make an entry on my books and records showing the existence of this Agreement.

    **J.** notify any Account Debtor or Obligor of your interest in the Property and tell the Account Debtor or Obligor to make payments to you or someone else you name.

If you perform for me, you will use reasonable care. If you exercise the care and follow the procedures that you generally apply to the collection of obligations owed to you, you will be deemed to be using reasonable care. Reasonable care will not include: any steps necessary to preserve rights against prior parties; the duty to send notices, perform services or take any other action in connection with the management of the Property; or the duty to protect, preserve or maintain any security interest given to others by me or other parties. Your authorization to perform for me will not create an obligation to perform and your failure to perform will not preclude you from exercising any other rights under the law or this Loan Agreement. All cash and non-cash proceeds of the Property may be applied by you only upon your actual receipt of cash proceeds against such of the Secured Debts, matured or unmatured, as you determine in your sole discretion.

If you come into actual or constructive possession of the Property, you will preserve and protect the Property. For purposes of this paragraph, you will be in actual possession of the Property only when you have physical, immediate and exclusive control over the Property and you have affirmatively accepted that control. You will be in constructive possession of the Property only when you have both the power and the intent to exercise control over the Property.

**11. DEFAULT.** I will be in default if any of the following events (known separately and collectively as an Event of Default) occur:

    **A. Payments.** I fail to make a payment in full when due.

    **B. Insolvency or Bankruptcy.** The death, dissolution or insolvency of, appointment of a receiver by or on behalf of, application of any debtor relief law, the assignment for the benefit of creditors by or on behalf of, the voluntary or involuntary termination of existence by, or the commencement of any proceeding under any present or future federal or state insolvency, bankruptcy, reorganization, composition or debtor relief law by or against me, Obligor, or any co-signer, endorser, surety or guarantor of this Agreement or any other obligations Obligor has with you.

    **C. Business Termination.** I merge, dissolve, reorganize, end my business or existence, or a partner or majority owner dies or is declared legally incompetent.

    **D. Failure to Perform.** I fail to perform any condition or to keep any promise or covenant of this Agreement.

    **E. Other Documents.** A default occurs under the terms of any other Loan Document.

    **F. Other Agreements.** I am in default on any other debt or agreement I have with you.

    **G. Misrepresentation.** I make any verbal or written statement or provide any financial information that is untrue, inaccurate, or conceals a material fact at the time it is made or provided.

    **H. Judgment.** I fail to satisfy or appeal any judgment against me.

    **I. Forfeiture.** The Property is used in a manner or for a purpose that threatens confiscation by a legal authority.

DocuSign Envelope ID: A157BBFD-1080-4181-A7E7-1C24E8FD2AF7

# Exhibit B

**J. Name Change.** I change my name or assume an additional name without notifying you before making such a change.

**K. Property Transfer.** I transfer all or a substantial part of my money or property.

**L. Property Value.** You determine in good faith that the value of the Property has declined or is impaired.

**M. Material Change.** Without first notifying you, there is a material change in my business, including ownership, management, and financial conditions.

**N. Insecurity.** You determine in good faith that a material adverse change has occurred in my financial condition from the conditions set forth in my most recent financial statement before the date of this Agreement or that the prospect for payment or performance of the Secured Debts is impaired for any reason.

**12. DUE ON SALE OR ENCUMBRANCE.** You may, at your option, declare the entire balance of this Agreement to be immediately due and payable upon the creation of, or contract for the creation of, any lien, encumbrance, transfer or sale of all or any part of the Property. This right is subject to the restrictions imposed by federal law, as applicable.

**13. REMEDIES.** After I default, you may at your option do any one or more of the following.

**A. Acceleration.** You may make all or any part of the amount owing by the terms of the Secured Debts immediately due.

**B. Sources.** You may use any and all remedies you have under state or federal law or in any Loan Document.

**C. Insurance Benefits.** You may make a claim for any and all insurance benefits or refunds that may be available on my default.

**D. Payments Made On My Behalf.** Amounts advanced on my behalf will be immediately due and may be added to the Secured Debts.

**E. Assembly of Property.** You may require me to gather the Property and make it available to you in a reasonable fashion.

**F. Repossession.** You may repossess the Property so long as the repossession does not involve a breach of the peace. You may sell, lease or otherwise dispose of the Property as provided by law. You may apply what you receive from the disposition of the Property to your expenses, your attorneys' fees and legal expenses (where not prohibited by law), and any debt I owe you. If what you receive from the disposition of the Property does not satisfy the debt, I will be liable for the deficiency (where permitted by law). In some cases, you may keep the Property to satisfy the debt.

Where a notice is required, I agree that ten days prior written notice sent by first class mail to my address listed in this Agreement will be reasonable notice to me under the New York Uniform Commercial Code. If the Property is perishable or threatens to decline speedily in value, you may, without notice to me, dispose of any or all of the Property in a commercially reasonable manner at my expense following any commercially reasonable preparation or processing (where permitted by law).

If any items not otherwise subject to this Agreement are contained in the Property when you take possession, you may hold these items for me at my risk and you will not be liable for taking possession of them (where permitted by law).

**G. Use and Operation.** You may enter upon my premises and take possession of all or any part of my property for the purpose of preserving the Property or its value, so long as you do not breach the peace. You may use and operate my property for the length of time you feel is necessary to protect your interest, all without payment or compensation to me.

**H. Waiver.** By choosing any one or more of these remedies you do not give up your right to use any other remedy. You do not waive a default if you choose not to use a remedy. By electing not to use any remedy, you do not waive your right to later consider the event a default and to use any remedies if the default continues or occurs again.

**14. WAIVER OF CLAIMS.** I waive all claims for loss or damage caused by your acts or omissions where you acted reasonably and in good faith.

**15. PERFECTION OF SECURITY INTEREST AND COSTS.** I authorize you to file a financing statement and/or security agreement, as appropriate, covering all of my personal Property. I will comply with, facilitate, and otherwise assist you in connection with obtaining perfection or control over the Property for purposes of perfecting your security interest under the Uniform Commercial Code. I agree to pay all taxes, fees and costs you pay or incur in connection with preparing, filing or recording any financing statements or other security interest filings on the Property. I agree to pay all actual costs of terminating your security interest.

**16. APPLICABLE LAW.** This Agreement is governed by the laws of New York, the United States of America, and to the extent required, by the laws of the jurisdiction where the Property is located, except to the extent such state laws are preempted by federal law. In the event of a dispute, the exclusive forum, venue and place of jurisdiction will be in Florida, unless otherwise required by law.

**17. JOINT AND INDIVIDUAL LIABILITY AND SUCCESSORS.** Each Debtor's obligations under this Agreement are independent of the obligations of any other Debtor. You may sue each Debtor individually or together with any other Debtor. You may release any part of the Property and I will still be obligated under this Agreement for the remaining Property. Debtor agrees that you and any party to this Agreement may extend, modify or make any change in the terms of this Agreement or any evidence of debt without Debtor's consent. Such a change will not release Debtor from the terms of this Agreement. If you assign any of the Secured Debts, you may assign all or any part of this Agreement without notice to me or my consent, and this Agreement will inure to the benefit of your assignee to the extent of such assignment. You will continue to have the unimpaired right to enforce this Agreement as to any of the Secured Debts that are not assigned. This Agreement shall inure to the benefit of and be enforceable by you and your successors and assigns and any other person to whom you may grant an interest in the Secured Debts and shall be binding upon and enforceable against me and my personal representatives, successors, heirs and assigns.

**18. AMENDMENT, INTEGRATION AND SEVERABILITY.** This Agreement may not be amended or modified by oral agreement. No amendment or modification of this Agreement is effective unless made in writing and executed by you and me. This Agreement and the other Loan Documents are the complete and final expression of the understanding between you and me. If any provision of this Agreement is unenforceable, then the unenforceable provision will be severed and the remaining provisions will still be enforceable.

DocuSign Envelope ID: A157BBFD-1080-4181-A7E7-1C24E8FD2AF7

# Exhibit B

**19. INTERPRETATION.** Whenever used, the singular includes the plural and the plural includes the singular. The section headings are for convenience only and are not to be used to interpret or define the terms of this Agreement.

**20. NOTICE AND ADDITIONAL DOCUMENTS.** Unless otherwise required by law, any notice will be given by delivering it or mailing it by first class mail to the appropriate party's address listed in the DATE AND PARTIES section, or to any other address designated in writing. Notice to one Debtor will be deemed to be notice to all Debtors. I will inform you in writing of any change in my name, address or other application information. I will provide you any other, correct and complete information you request to effectively grant a security interest on the Property. I agree to sign, deliver, and file any additional documents or certifications that you may consider necessary to perfect, continue, and preserve my obligations under this Agreement and to confirm your lien status on any Property. Time is of the essence.

**SIGNATURES.** By signing, I agree to the terms contained in this Agreement. I also acknowledge receipt of a copy of this Agreement.

**DEBTOR:**

The One Technologies, LLC

By _POLINA LOZOVYI_____ Date_____ 8/8/2017

POLINA LOZOVYI, Managing Member

# Exhibit C

## UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS (front and back) CAREFULLY

A. NAME & PHONE OF CONTACT AT FILER [optional]
Phone: (800) 331-3282 Fax: (818) 662-4141

B. SEND ACKNOWLEDGMENT TO: (Name and Address)    34067 - FIRST HOME BANK

CT Lien Solutions
P.O. Box 29071                    59825290
Glendale, CA 91209-9071          NYNY

File with: Secretary of State, NY

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S EXACT FULL LEGAL NAME - Insert only one debtor name (1a or 1b) - do not abbreviate or combine names

| 1a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| THE ONE TECHNOLOGIES, LLC | | | | |
| 1b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | | SUFFIX |
| | | | | |
| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 126 W END AVE STE 1 | BROOKLYN | NY | 11235 | USA |
| 1d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 1e. TYPE OF ORGANIZATION | 1f. JURISDICTION OF ORGANIZATION | 1g. ORGANIZATIONAL ID #, if any |
| | DEBTOR | LLC | MI | 4469336    NONE |

2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME - Insert only one debtor name (2a or 2b) - do not abbreviate or combine names

| 2a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| | | | | |
| 2b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | | SUFFIX |
| | | | | |
| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| | | | | |
| 2d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 2e. TYPE OF ORGANIZATION | 2f. JURISDICTION OF ORGANIZATION | 2g. ORGANIZATIONAL ID #, if any |
| | | | | NONE |

3. SECURED PARTY'S NAME (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - Insert only one secured party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| FIRST HOME BANK, a Florida Banking Corporation | | | | |
| 3b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | | SUFFIX |
| | | | | |
| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 9190 SEMINOLE BLVD | SEMINOLE | FL | 33772 | USA |

4. This FINANCING STATEMENT covers the following collateral:
All present and future right, title and interest in and to any and all personal property of the Debtor, whether such property is now existing or hereafter created, acquired or arising and wherever located from time to time, including without limitation, the following categories of property: goods (including inventory, equipment, fixtures, farm products and any accessions thereto), instruments (including promissory notes), documents, accounts (including health-care-insurance receivables), chattel paper (whether tangible or electronic), deposit accounts, letter-of-credit rights (whether or not the letter-of-credit is evidenced by a writing), commercial tort claims, securities and all other investment property, general intangibles (including payment intangibles and software), all supporting obligations and all proceeds, products, additions, accessions, substitutions and replacements of the foregoing property.
Any term used herein is as defined by the Uniform Commercial Code and further as modified or amended by the laws of the jurisdiction which governs this transaction.
This financing statement covers, and is intended to cover, all personal property of the Debtor.

| 5. ALTERNATIVE DESIGNATION [if applicable]: | LESSEE/LESSOR | CONSIGNEE/CONSIGNOR | BAILEE/BAILOR | SELLER/BUYER | AG. LIEN | NON-UCC FILING |
|---|---|---|---|---|---|---|
| 6. This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS.    Attach Addendum    [if applicable] | | 7. Check to REQUEST SEARCH REPORT(S) on Debtor(s) [ADDITIONAL FEE]    [optional] | | All Debtors | Debtor 1 | Debtor 2 |

8. OPTIONAL FILER REFERENCE DATA
59825290              THE ONE TECHNOLOGIES, LLC                          311713670

FILING OFFICE COPY - UCC FINANCING STATEMENT (FORM UCC1)   (REV. 05/22/02)

Prepared by Lien Solutions, P.O. Box 29071,
Glendale, CA 91209-9071 Tel (800) 331-3282

8/7/2017                          **Exhibit C** ifornia Code-%ONE TEC%

                    44 COURT ST
                    BROOKLYN NY 11201

    **SecPty**     AMAZON CAPITAL SERVICES, INC.
                    2201 WESTLAKE AVE
                    SEATTLE WA 98121

**3**  **201707175855076 Original filed on 07/17/2017**
       **expires on 07/17/2022**
       **Debtor**    THE ONE TECHNOLOGIES, LLC
                     126 W END AVE STE 1
                     BROOKLYN NY 11235

       **SecPty**    FIRST HOME BANK, A FLORIDA BANKING CORPORATION
                     9190 SEMINOLE BLVD
                     SEMINOLE FL 33772

                                              **Terminated**

**4**  **201508255949979 Original filed on 08/25/2015**
       **expires on 08/25/2020**
       **Debtor**    THE ONE TECHNOLOGIES
                     44 COURT ST
                     BROOKLYN NY 11201

       **Debtor**    THE ONE TECHNOLOGIES, LLC
                     44 COURT ST
                     BROOKLYN NY 11201

       **SecPty**    CORPORATION SERVICE COMPANY, AS REPRESENTATIVE
                     P.O. BOX 2576 UCCSPREP@CSCINFO.COM
                     SPRINGFIELD IL 62708

    **201603225330633** filed on 03/22/2016 Film# 201603225330633
    **Term**

**5**  **201610136210004 Original filed on 10/13/2016**
       **expires on 10/13/2021**
       **Debtor**    THE ONE TECHNOLOGIES, LLC
                     44 COURT ST STE 1217
                     BROOKLYN NY 11201

       **SecPty**    CHTD COMPANY
                     P.O. BOX 2576
                     SPRINGFIELD IL 62708

    **201705165585940** filed on 05/16/2017 Film# 201705165585940
    **Term**

Report generated on 08/07/2017 at 03:45 PM CST

[End of Report]

# Exhibit C

# iLien Cover Page

Date Printed: 07/17/2017

Debtor:
THE ONE TECHNOLOGIES, LLC
126 W END AVE STE 1
BROOKLYN, NY 11235

Borrower Name : THE ONE TECHNOLOGIES, LLC
Loan Number : 311713670
Branch: SMARTBIZ
REF4:
Ref5:
Ref6:
Ref7:
Law Firm Bill Code:

iLien File #: 65380469
Order Confirmation #: 59825290

UserID: 253312
UserName: HANNAH LAYTON
Number of Collateral Pages Attached: 0

Transaction Type: Original
Jurisdiction: NY, Secretary of State

## Exhibit D

 ANASTASI | JELLUM
YOUR LEGAL DEPARTMENT™

14985 60ᵀᴴ STREET NORTH | STILLWATER, MN 55082
PHONE: 651-439-2951 | FAX: 651-439-1417 | AJ-LAW.COM

Garth G. Gavenda
Garth.Gavenda@AJ-Law.com
Direct: (651) 332-8312

**Certified Article Number**

9314 7699 0430 0047 8296 85

**SENDER'S RECORD**

June 19, 2018

The One Technologies, LLC
Attn: Polina Lozovyi
44 Court Street, Suite 1217
Brooklyn, New York 11201

<u>**VIA REGULAR AND CERTIFIED MAIL,**</u>
<u>**RETURN RECEIPT REQUESTED**</u>

RE:   *First Home Bank/The One Technologies, LLC*
      Loan No.: 9613445009
      Our File No.: 20271

<u>**NOTICE OF DEFAULT AND DEMAND LETTER**</u>

Dear Ms. Lozovyi:

Please be advised that our law firm represents First Home Bank, a Florida banking corporation ("Lender"), with respect to various matters, including collection of the above-referenced loan **which is in default as described below.**

As you are aware, Lender is the current owner and holder of that certain promissory note executed by The One Technologies, LLC, a New York limited liability company ("Borrower"), dated August 8, 2017, in the original principal amount of Three Hundred Fifty Thousand and 00/100 Dollars ($350,000.00) ("Note").

The Note is secured, in part, by that certain security agreement executed by Borrower, in favor of Lender, dated August 8, 2017 ("Security Agreement"), granting to Lender a perfected security interest in, among other things, all equipment, inventory, accounts, instruments, chattel paper, general intangibles, and documents of Borrower (collectively, "Collateral").

The Note is further secured by that certain guaranty executed by Polina Lozovyi ("Guarantor"), in favor of Lender, dated August 8, 2017 ("Guaranty").

The Note, Security Agreement, Guaranty, and all other documents executed in connection therewith shall hereinafter sometimes be referred to collectively as the "Loan Documents". Unless otherwise defined herein, all capitalized terms used in this letter shall have the same meanings defined in the Loan Documents.

You are hereby advised that events of default have occurred, and are continuing, under the Note due to, among other things, Borrower's failure to make the monthly payments when due under the Note.

# Exhibit D

The One Technologies, LLC
June 19, 2018
Page 2

Due to the aforementioned continuing events of default, Lender hereby advises Borrower that it is exercising its right to accelerate all amounts due and owing under the Note. Lender hereby demands that Borrower remit to Lender the total amount due under the Note of Three Hundred Thirty-Nine Thousand Two Hundred Thirty-One and 66/100 Dollars ($339,231.66) ("Demand Amount"), which consists of outstanding principal of Three Hundred Thirty-Four Thousand Five Hundred Fifty-Two and 30/100 Dollars ($334,552.30), accrued but unpaid interest to June 18, 2018, of Three Thousand Seven Hundred Twelve and 16/100 Dollars ($3,712.16), which continues to accrue to the date of final payment at the present daily rate of Sixty-Eight and 74/100 Dollars ($68.74), late fees of Eight Hundred Thirty-Two and 20/100 Dollars ($832.20), a site inspection fee of One Hundred Thirty-Five and 00/100 Dollars ($135.00), plus attorneys' fees and costs incurred by Lender in the collection of the Note, all payable in **certified funds** by no later than June 29, 2018. **PARTIAL PAYMENT WILL NOT BE ACCEPTABLE.**

Please be advised that, should Borrower fail to pay the Demand Amount on or before June 29, 2018, Lender shall, in its sole discretion and without further notice, exercise any of its rights and remedies available under the Loan Documents, and at law, including, but not limited to, the following:

1. Lender may, without further notice, file lawsuits seeking to obtain a judgment in the amounts due and owing under the Note against Borrower and Guarantor;

2. Lender may exercise its right to foreclose on any mortgages or liens on real estate securing the Note, evict any individuals or businesses occupying those properties, and have those properties sold to the highest bidder;

3. Lender may, without further notice, exercise its right to foreclose upon, levy upon, and/or sell the Collateral;

4. Lender may, without further notice, exercise its right to collect rents due to Borrower directly from any tenants of Borrower or Guarantor that are located at any of the real estate properties that are subject to the Lender's mortgages or liens securing the Note and/or Guaranty;

5. Lender may conduct discovery in aid of executing and collecting on any judgments that it obtains against Borrower and Guarantor, for the amounts due under the Note, which may require Borrower, Guarantor, their representatives, and others doing business with them to produce documents, information, and testimony regarding their assets;

6. Lender may collect and enforce any judgments it obtains against Borrower and Guarantor for the amounts due under the Note by attaching, garnishing, freezing, or otherwise executing upon bank accounts, investment accounts, accounts receivable, trademarks, intellectual property, and other tangible and/or intangible property owned by Borrower and/or Guarantor;

# Exhibit D

The One Technologies, LLC
June 19, 2018
Page 3

7.  Lender may seek to have a court-appointed receiver conduct the business affairs of Borrower for the benefit of the Lender and other creditors of Borrower;

8.  Lender may report any defaulted debt and/or judgments owed by Borrower and Guarantor for the amounts due under the Note to credit reporting agencies; and/or,

9.  Lender may report the debts and/or judgments owed by Borrower and Guarantor for the amounts due under the Note to the U.S. Small Business Administration ("SBA"), for referral to the U.S. Treasury Department for further collection and enforcement proceedings. If that occurs, the U.S. Treasury Department may take any one or more of the following actions:

    a.  The Treasury Department may, under its Cross-Servicing Program, collect the debt owed under the Note by garnishing any employment wages that are earned by Borrower or Guarantor. This is accomplished by having the Treasury Department directly contact employers and require them to pay a substantial portion of their employee's earned wages to the Treasury Department instead of to the employee.

    b.  The Treasury Department may also, under its Cross-Servicing Program, trace and locate individuals and entities that owe monies to the federal government on SBA loans and then retain private collection agencies or direct government employees to pursue and collect from those debtors.

    c.  The Treasury Department may, in addition to utilizing the resources of its Cross-Servicing Program, also pursue remedies through its Treasury Offset Program ("TOP") against Borrower and Guarantor. Under TOP, the federal government collects delinquent debt owed on SBA loans by administratively offsetting the debts owed to the Treasury Department against any federal funds that may be due and payable to SBA borrowers and other SBA loan obligors from federal and state sources, such as tax refunds, wages, retirement checks, contractor payments, and Social Security Administration payments. Thus, the federal government can offset that money owed to the Treasury Department against any monies that may be due or payable to Borrower or Guarantor, and Borrower or Guarantor may lose their right to receive tax refunds, Social Security payments, and other monies from the U.S. government until such time as the SBA debt is repaid.

Additionally, please be advised, pursuant to the terms of the Security Agreement, Borrower shall not sell, lease, license, or otherwise transfer or liquidate all, or any part, of the Collateral without Lender's prior written consent.

# Exhibit D

The One Technologies, LLC
June 19, 2018
Page 4

Nothing contained in this letter shall be deemed a waiver of any other default or event of default not specifically described herein, nor a waiver of any rights, remedies, or recourse available to Lender, nor any election of remedies resulting from the defaults discussed herein, nor any other defaults which may exist with respect to the indebtedness evidenced by the Note.

Thank you for your prompt attention and response to this matter. Please direct all communications and payments to our attention.

Sincerely,

Garth G. Gavenda

enc.    Discovery Preservation Notice

cc:     Jeri D. McCall @ First Home Bank (via electronic mail)
        Polina Lozovyi

# Exhibit D

## DISCOVERY PRESERVATION NOTICE

RE:   *First Home Bank/The One Technologies, LLC*
      Loan No.: 9613445009
      Our File No.: 20271

You are receiving this Discovery Preservation Notice in association with the default of The One Technologies, LLC, a New York limited liability company ("Borrower"), under the above-referenced loan with First Home Bank, a Florida banking corporation ("Lender").

Please be advised that Lender believes electronically stored information to be an important and irreplaceable source of discovery and/or evidence relating to potential litigation between Lender, Borrower, and Polina Lozovyi ("Guarantor"), regarding the Loan Documents, as defined in the Notice of Default and Demand Letter provided contemporaneously herewith.

Due to the potential litigation, the preservation of all information from Borrower's and Guarantor's computer systems, removable electronic media, and other locations is required. This includes, but is not limited to, email and other electronic communication, word processing documents, spreadsheets, databases, calendars, telephone logs, contact manager information, internet usage files, and network access information.

Accordingly, Borrower and Guarantor should also preserve the following platforms in the possession of Borrower and Guarantor or a third party under the control of Borrower and Guarantor (such as an employee or outside vendor under contract): databases, networks, computer systems, including legacy systems (hardware and software), servers, archives, backup or disaster recovery systems, tapes, discs, drives, cartridges and other storage media, laptops, personal computers, internet data, personal digital assistants, handheld wireless devices, mobile telephones, paging devices, and audio systems (including voicemail).

## PRESERVATION OBLIGATIONS

The laws and rules prohibiting destruction of evidence apply to electronically stored information in the same manner that they apply to other evidence. Due to its format, electronic information is easily deleted, modified, or corrupted. Accordingly, Borrower and Guarantor must take every reasonable step to preserve this information until a final resolution of this matter.

This includes, but is not limited to, an obligation to:

A.   Discontinue all data destruction and backup tape recycling policies;

B.   Preserve and not dispose of relevant hardware unless an exact replica of the device (a forensic image) is made;

C.   Preserve and not destroy passwords, decryption procedures (and accompanying software), network access codes, ID names, manuals, tutorials, written instructions, decompression or reconstruction software; and

# Exhibit D

D.     Maintain all other pertinent information and tools needed to access, review, and reconstruct the data and as may be necessary to access, view, and/or reconstruct all requested or potentially relevant electronic data.

## DESCRIPTION OF DATA SOUGHT

Due to potential litigation, the preservation of all information from Borrower's and Guarantor's computer systems, removable electronic media, and other locations, relating to the Loan Documents, including, but not limited to, all underlying negotiations, loan documentation, and the like, is required. This includes, but is not limited to, email and other electronic communication, word processing documents, spreadsheets, databases, calendars, telephone logs, contact manager information, Internet usage files, network access information, mini-secure digital cards, secure digital cards, 8 inch floppy drive, 5.25 inch floppy drive, 3.5 inch floppy drive, LS-120 high capacity floppy drive, USB thumb drive, CD-R, CD-RW, DVD-R, DVD-RW, tape drives, desktop hard drive, external storage hard drive, laptop hard drive, cellphone stored data, smart phone stored data, Blackberry stored data, iPad stored data, iPhone stored data, memory sticks, and/or flash drives.

I.     **Electronic Files.** You have an obligation to preserve all digital or analog electronic files in electronic format, regardless of whether hard copies of the information exist. This includes preserving:

    A.     Active data (*i.e.*, data immediately and easily accessible on the client's systems today);

    B.     Archived data (*i.e.*, data residing on backup tapes or other storage media);

    C.     Deleted data (*i.e.*, data that has been deleted from a computer hard drive but is recoverable through computer forensic techniques);

    D.     Legacy data (*i.e.*, data created on old or obsolete hardware or software); and

    E.     Borrower and Guarantor must preserve active, archived, and legacy data including, but not limited to:

      1.     Word-processed files, including drafts and revisions;

      2.     Spreadsheets, including drafts and revisions;

      3.     Databases;

      4.     CAD (computer-aided design) files, including drafts and revisions;

      5.     Presentation data or slide shows produced by presentation software (such as Microsoft PowerPoint);

      6.     Graphs, charts and other data produced by project management software (such as Microsoft Project);

# Exhibit D

7. Animations, images, audio, video, and audiovisual recordings, MP3 players, and voicemail files;

8. Data generated by calendaring, task management, and personal information management (PIM) software (such as Microsoft Outlook or Lotus Notes);

9. Data created with the use of personal data assistants (PDAs), such as PalmPilot, HP Jornada; Cassiopeia, or other Windows or Apple CE-based or Pocket PC devices;

10. Data created with the use of document management software;

11. Data created with the use of paper and electronic mail logging and routing software; and

12. Relevant data transmitted or received in any Facebook, Instagram, Snapchat, or Twitter account.

F. Borrower and Guarantor must preserve media used by Borrower's and Guarantor's computers including but not limited to:

1. Magnetic, optical, or other storage media, including the hard drives or floppy disks used by Borrower's and Guarantor's computers;

2. Backup media (*i.e.*, other hard drives, backup tapes, floppies, Jaz cartridges, CD-ROMs, mini-secure digital cards, secure digital cards, 8 inch floppy drive, 5.25 inch floppy drive, 3.5 inch floppy drive, LS-120 high capacity floppy drive, USB thumb drive, CD-R, CD-RW, DVD-R, DVD-RW, tape drives, desktop hard drive, external storage hard drive, laptop hard drive, cellphone stored data, smart phone stored data, Blackberry stored data, iPad stored data, iPhone stored data, memory sticks, and/or flash drives) and the software necessary to reconstruct the data contained on the media; and

3. Archived media (you should retain a forensic image of any media no longer in service but used during the following time periods): from January 1, 2016, to the present.

II. **Hardware.** Borrower and Guarantor have an obligation to preserve all electronic processing systems, even if they are replaced. This includes computer servers, stand-alone personal computers, hard drives, laptops, PDAs, and other electronic processing devices. Borrower and Guarantor should retain copies of any hardware no longer in service but used during the following time periods: At all times from January 1, 2017, to the present.

III. **Emails.** You have an obligation to preserve all potentially relevant internal and external emails that were sent or received. Email must be preserved in electronic format, regardless of whether hard copies of the information exist. To the extent that you use a web based internet service for your emails (for example, Gmail, Outlook, Hotmail, Yahoo, AOL, and the like), identification of the email server should be supplied and that all emails currently

3

# Exhibit D

stored on your computer or other backup drives as referenced herein shall also be preserved.

IV.   **Internet Web Activity.** You have an obligation to preserve all records of Internet and Web-browser generated files in electronic format, regardless of whether hard copies of the information exist. This includes Internet and Web-browser- generated history files, caches, emails, and "cookies" files stored on backup media, emails or generated by an individual employed by Borrower and Guarantor.

V.   **Activity Logs.** Borrower and Guarantor must preserve all hard copy or electronic logs documenting computer use by Borrower and Guarantor.

VI.   **Supporting Information.** Borrower and Guarantor must preserve all supporting information relating to the requested electronic data and/or media including codebooks, keys, data dictionaries, diagrams, handbooks, or other supporting documents that aid in reading or interpreting database, media, email, hardware, software, or activity log information.

## DESCRIPTION OF DOCUMENTS AND MEDIA THAT SHOULD BE PRESERVED

I.   **Data Preservation.** Borrower and Guarantor should immediately preserve all data and information about the data (*i.e.*, backup activity logs and document retention policies) relating to documents maintained in the ordinary course of business for the employees listed below. This includes, but is not limited to, the information listed below.

A.   Email and any relevant metadata, including message contents, header information, and email system logs that was sent or received by or is in the possession of the following parties and/or contains information about the following subjects:

1.   Parties: Lender, Borrower, and Guarantor.

2.   Subject Matters: the Loan Documents including, but not limited to, all underlying negotiations, loan documentation, and the like.

B.   All active and deleted copies of any word processing files, spreadsheets, PowerPoint presentations, or other documents that are in the possession of the following parties and/or contain information about the following subjects:

1.   Parties: Lender, Borrower, and Guarantor.

2.   Subject Matters: the Loan Documents including, but not limited to, all underlying negotiations, loan documentation, and the like.

C.   Databases and any information about the databases that are in the possession of the following parties and/or contain information about the following subjects:

1.   Parties: Lender, Borrower, and Guarantor.

4

# Exhibit D

2.   Subject Matters: the Loan Documents including, but not limited to, all underlying negotiations, loan documentation, and the like.

D.   All paper and/or electronic logs of computer system and network activity that pertain to electronic data storage that are in the possession of the following parties and/or contain information about the following subjects:

1.   Parties: Lender, Borrower, and Guarantor.

2.   Subject Matters: the Loan Documents including, but not limited to, all underlying negotiations, loan documentation, and the like.

E.   All active and deleted copies of any electronic calendars or scheduling programs, including programs maintained on PDAs that are in the possession of the following parties and/or contain information about the following subjects:

1.   Parties: Lender, Borrower, and Guarantor.

2.   Subject Matters: the Loan Documents including, but not limited to, all underlying negotiations, loan documentation, and the like.

F.   All active, archived, legacy, and deleted copies of any other electronic data that are in the possession of the following parties and/or contain information about the following subjects:

1.   Parties: Lender, Borrower, and Guarantor.

2.   Subject Matters: the Loan Documents including, but not limited to, all underlying negotiations, loan documentation, and the like.

G.   All active, archived, legacy, and deleted copies of any other electronic data that are related to any Twitter account, Facebook account, Instagram, or other social media account that are maintained by Borrower and Guarantor or that are in the possession of the following parties and/or contain information about the following subjects:

1.   Parties: Lender, Borrower, and Guarantor.

2.   Subject Matters: the Loan Documents including, but not limited to, all underlying negotiations, loan documentation, and the like.

II.   **Data Storage Devices.**

A.   <u>Online Data Storage.</u> If Borrower and Guarantor use online storage and/or direct access storage devices, they must immediately cease modifying or deleting any electronic data unless a computer forensic expert makes a forensic image of the electronic file or device, follows proper preservation protocols for assuring the accuracy of the file (*i.e.*, chain of custody), and makes the file available for litigation.

# Exhibit D

B. <u>Offline Data Storage.</u> Offline data storage includes, but is not limited to, backup and archival media, floppy diskettes, magnetic, magneto-optical, and/or optical tapes and cartridges, DVDs, CDROMs, mini-secure digital cards, secure digital cards, 8 inch floppy drive, 5.25 inch floppy drive, 3.5 inch floppy drive, LS-120 high capacity floppy drive, USB thumb drive, CD-R, CD-RW, DVD-R, DVD-RW, tape drives, desktop hard drive, external storage hard drive, laptop hard drive, cellphone stored data, smart phone stored data, Blackberry stored data, iPad stored data, iPhone stored data, memory sticks, and/or flash drives, and other removable media. Borrower and Guarantor should immediately suspend all activity that might result in destruction or modification of all of the data stored on any offline media. This includes overwriting, recycling or erasing all or part of the media. This request includes, but is not limited to, media used to store data from personal computers, laptops, mainframe computers, and servers.

C. <u>Data Storage Device Replacement.</u> If Borrower and Guarantor replace any electronic data storage devices, Borrower and Guarantor may not dispose of the storage devices.

D. <u>Preservation of Storage Devices.</u> Borrower and Guarantor may not modify, delete or otherwise alter (*i.e.*, by data compression, disk de-fragmentation, or optimization routines) any electronic data unless a computer forensic expert makes a forensic image of the electronic file or device, follows proper preservation protocols for assuring the accuracy of the file *i.e.*, chain of custody), and makes the file available for litigation. The expert must make a forensic image of active files, restored versions of deleted files, and restored versions of deleted file fragments, hidden files, and directory listings. This includes, but is not limited to, preserving electronic data (stored on online or offline storage devices) that came from the following hardware or software applications:

1. Fixed drives on stand-alone personal computers or laptops;

2. Network servers and workstations; and

3. Software application programs and utilities.

## PRESERVATION COMPLIANCE

I. **Activity Log.** In order to show preservation compliance, Borrower and Guarantor must maintain a log, documenting all alterations or deletions made to any electronic data storage device or any electronic data processing system. The log should include changes and deletions made by supervisors, employees, contractors, vendors, or any other third parties.

II. **Forensic Images.** Borrower and Guarantor must secure a forensic image copy (a bit-by-bit copy of a hard drive that ensures the computer system is not altered during the imaging process) of all electronic data contained on the personal computers and/or laptops of the individuals listed below. The forensic image should include active files, deleted files, deleted file fragments, hidden files, directories, and any other data contained on the computer. Borrower and Guarantor must also collect and store any offline or online storage

# Exhibit D

devices that contain data from any electronic processing devices for the individuals or business entities listed below.

    A.    Lender
    B.    Borrower
    C.    Guarantor

III.    **Chain of Custody.** For each piece of media that Borrower and Guarantor preserve, Borrower and Guarantor must document a complete chain of custody. A proper chain of custody will ensure that no material changes, alterations or modifications were made while the evidence was handled. Chain of custody documentation must indicate where the media has been, whose possession it has been in, and the reason for that possession.

IV.    **Electronic Data Created After This Discovery Preservation Notice.** For any electronic data created after this Discovery Preservation Notice or for any electronic processing systems used after this Discovery Preservation Notice, Borrower and Guarantor must take the proper steps to avoid destroying potentially relevant evidence. This includes following the above preservation protocols.

Compliance with Borrower's and Guarantor's preservation obligations includes forwarding a copy of this Discovery Preservation Notice to all individuals or organizations that are responsible for any of the items referred to in this Discovery Preservation Notice. If this Discovery Preservation Notice is in any respect unclear, please contact us immediately.

Dated: June 19, 2018.        **ANASTASI JELLUM, P.A.**

    By: /s/ *Garth G. Gavenda*
        Garth G. Gavenda
        14985 60th Street North
        Stillwater, Minnesota 55082
        Telephone: (651) 439-2951
        Facsimile: (651) 439-1417
        Garth.Gavenda@AJ-Law.com

    ATTORNEYS FOR FIRST HOME BANK,
    A FLORIDA BANKING CORPORATION

## Exhibit D

 ANASTASI | JELLUM
YOUR LEGAL DEPARTMENT

14985 60ᵀᴴ Street North | Stillwater, MN 55082
Phone: 651-439-2951 | Fax: 651-439-1417 | AJ-Law.com

Garth G. Gavenda
Garth.Gavenda@AJ-Law.com
Direct: (651) 332-8312

**Certified Article Number**
9314 7699 0430 0047 8300 01
**SENDER'S RECORD**

June 19, 2018

Polina Lozovyi
2848 Brighton 7ᵗʰ Street, 9F
Brooklyn, New York 11235

**VIA REGULAR AND CERTIFIED MAIL,
RETURN RECEIPT REQUESTED**

RE:  *First Home Bank/The One Technologies, LLC*
Loan No.: 9613445009
Our File No.: 20271

## NOTICE OF DEFAULT AND DEMAND LETTER

Dear Ms. Lozovyi:

Please be advised that our law firm represents First Home Bank, a Florida banking corporation ("Lender"), with respect to various matters, including collection of the above-referenced loan **which is in default** as described in the enclosed copy of the notice of default and demand letter ("Demand Letter"), which has been sent to The One Technologies, LLC, a New York limited liability company ("Borrower").

As you know, you unconditionally guaranteed the above-referenced loan as evidenced by that certain Guaranty executed by you, in favor of Lender, dated August 8, 2017.

Demand is hereby made that you, as guarantor of the above-referenced loan, make payment to Lender for the Demand Amount, as specified in the enclosed Demand Letter. This correspondence constitutes the notice of default under the above-referenced loan.

Should Borrower and/or you fail to pay the Demand Amount on or before June 29, 2018, Lender shall pursue all legal remedies available to it to collect the Demand Amount including, but not limited to, commencement of a lawsuit to obtain a money judgment against Borrower and you, jointly and severally.

Nothing contained in this letter shall be deemed a waiver of any other default or event of default not specifically described in the Demand Letter, nor a waiver of any rights, remedies, or recourse available to Lender, nor any election of remedies resulting from the defaults discussed in the Demand Letter, or any other defaults which may exist with respect to the above-referenced loan.

ATTORNEYS AND COUNSELORS AT LAW

## Exhibit D

Polina Lozovyi
June 19, 2018
Page 2

Thank you for your prompt attention and response to this matter. Please direct all communications and payments to our attention.

Sincerely,

Garth G. Gavenda

enc.    Notice of Default and Demand Letter
        Discovery Preservation Notice

cc:     Jeri D. McCall @ First Home Bank (via electronic mail)

## Exhibit D



**ANASTASI | JELLUM**

14985 60ᵀᴴ STREET NORTH | STILLWATER, MN 55082
PHONE: 651-439-2951 | FAX: 651-439-1417 | AJ-LAW.COM

Garth G. Gavenda
Garth.Gavenda@AJ-Law.com
Direct: (651) 332-8312

**Certified Article Number**

9314 7699 0430 0047 8296 85

**SENDER'S RECORD**

June 19, 2018

The One Technologies, LLC
Attn: Polina Lozovyi
44 Court Street, Suite 1217
Brooklyn, New York 11201

**VIA REGULAR AND CERTIFIED MAIL,
RETURN RECEIPT REQUESTED**

RE:   *First Home Bank/The One Technologies, LLC*
      Loan No.: 9613445009
      Our File No.: 20271

### NOTICE OF DEFAULT AND DEMAND LETTER

Dear Ms. Lozovyi:

Please be advised that our law firm represents First Home Bank, a Florida banking corporation ("Lender"), with respect to various matters, including collection of the above-referenced loan **which is in default as described below**.

As you are aware, Lender is the current owner and holder of that certain promissory note executed by The One Technologies, LLC, a New York limited liability company ("Borrower"), dated August 8, 2017, in the original principal amount of Three Hundred Fifty Thousand and 00/100 Dollars ($350,000.00) ("Note").

The Note is secured, in part, by that certain security agreement executed by Borrower, in favor of Lender, dated August 8, 2017 ("Security Agreement"), granting to Lender a perfected security interest in, among other things, all equipment, inventory, accounts, instruments, chattel paper, general intangibles, and documents of Borrower (collectively, "Collateral").

The Note is further secured by that certain guaranty executed by Polina Lozovyi ("Guarantor"), in favor of Lender, dated August 8, 2017 ("Guaranty").

The Note, Security Agreement, Guaranty, and all other documents executed in connection therewith shall hereinafter sometimes be referred to collectively as the "Loan Documents". Unless otherwise defined herein, all capitalized terms used in this letter shall have the same meanings defined in the Loan Documents.

You are hereby advised that events of default have occurred, and are continuing, under the Note due to, among other things, Borrower's failure to make the monthly payments when due under the Note.

# Exhibit D

The One Technologies, LLC
June 19, 2018
Page 2

Due to the aforementioned continuing events of default, Lender hereby advises Borrower that it is exercising its right to accelerate all amounts due and owing under the Note. Lender hereby demands that Borrower remit to Lender the total amount due under the Note of Three Hundred Thirty-Nine Thousand Two Hundred Thirty-One and 66/100 Dollars ($339,231.66) ("Demand Amount"), which consists of outstanding principal of Three Hundred Thirty-Four Thousand Five Hundred Fifty-Two and 30/100 Dollars ($334,552.30), accrued but unpaid interest to June 18, 2018, of Three Thousand Seven Hundred Twelve and 16/100 Dollars ($3,712.16), which continues to accrue to the date of final payment at the present daily rate of Sixty-Eight and 74/100 Dollars ($68.74), late fees of Eight Hundred Thirty-Two and 20/100 Dollars ($832.20), a site inspection fee of One Hundred Thirty-Five and 00/100 Dollars ($135.00), plus attorneys' fees and costs incurred by Lender in the collection of the Note, all payable in **certified funds** by no later than June 29, 2018. **PARTIAL PAYMENT WILL NOT BE ACCEPTABLE.**

Please be advised that, should Borrower fail to pay the Demand Amount on or before June 29, 2018, Lender shall, in its sole discretion and without further notice, exercise any of its rights and remedies available under the Loan Documents, and at law, including, but not limited to, the following:

1.  Lender may, without further notice, file lawsuits seeking to obtain a judgment in the amounts due and owing under the Note against Borrower and Guarantor;

2.  Lender may exercise its right to foreclose on any mortgages or liens on real estate securing the Note, evict any individuals or businesses occupying those properties, and have those properties sold to the highest bidder;

3.  Lender may, without further notice, exercise its right to foreclose upon, levy upon, and/or sell the Collateral;

4.  Lender may, without further notice, exercise its right to collect rents due to Borrower directly from any tenants of Borrower or Guarantor that are located at any of the real estate properties that are subject to the Lender's mortgages or liens securing the Note and/or Guaranty;

5.  Lender may conduct discovery in aid of executing and collecting on any judgments that it obtains against Borrower and Guarantor, for the amounts due under the Note, which may require Borrower, Guarantor, their representatives, and others doing business with them to produce documents, information, and testimony regarding their assets;

6.  Lender may collect and enforce any judgments it obtains against Borrower and Guarantor for the amounts due under the Note by attaching, garnishing, freezing, or otherwise executing upon bank accounts, investment accounts, accounts receivable, trademarks, intellectual property, and other tangible and/or intangible property owned by Borrower and/or Guarantor;

# Exhibit D

The One Technologies, LLC
June 19, 2018
Page 3

7.    Lender may seek to have a court-appointed receiver conduct the business affairs of Borrower for the benefit of the Lender and other creditors of Borrower;

8.    Lender may report any defaulted debt and/or judgments owed by Borrower and Guarantor for the amounts due under the Note to credit reporting agencies; and/or,

9.    Lender may report the debts and/or judgments owed by Borrower and Guarantor for the amounts due under the Note to the U.S. Small Business Administration ("SBA"), for referral to the U.S. Treasury Department for further collection and enforcement proceedings. If that occurs, the U.S. Treasury Department may take any one or more of the following actions:

    a.    The Treasury Department may, under its Cross-Servicing Program, collect the debt owed under the Note by garnishing any employment wages that are earned by Borrower or Guarantor. This is accomplished by having the Treasury Department directly contact employers and require them to pay a substantial portion of their employee's earned wages to the Treasury Department instead of to the employee.

    b.    The Treasury Department may also, under its Cross-Servicing Program, trace and locate individuals and entities that owe monies to the federal government on SBA loans and then retain private collection agencies or direct government employees to pursue and collect from those debtors.

    c.    The Treasury Department may, in addition to utilizing the resources of its Cross-Servicing Program, also pursue remedies through its Treasury Offset Program ("TOP") against Borrower and Guarantor. Under TOP, the federal government collects delinquent debt owed on SBA loans by administratively offsetting the debts owed to the Treasury Department against any federal funds that may be due and payable to SBA borrowers and other SBA loan obligors from federal and state sources, such as tax refunds, wages, retirement checks, contractor payments, and Social Security Administration payments. Thus, the federal government can offset that money owed to the Treasury Department against any monies that may be due or payable to Borrower or Guarantor, and Borrower or Guarantor may lose their right to receive tax refunds, Social Security payments, and other monies from the U.S. government until such time as the SBA debt is repaid.

Additionally, please be advised, pursuant to the terms of the Security Agreement, Borrower shall not sell, lease, license, or otherwise transfer or liquidate all, or any part, of the Collateral without Lender's prior written consent.

# Exhibit D

The One Technologies, LLC
June 19, 2018
Page 4

Nothing contained in this letter shall be deemed a waiver of any other default or event of default not specifically described herein, nor a waiver of any rights, remedies, or recourse available to Lender, nor any election of remedies resulting from the defaults discussed herein, nor any other defaults which may exist with respect to the indebtedness evidenced by the Note.

Thank you for your prompt attention and response to this matter. Please direct all communications and payments to our attention.

Sincerely,

Garth G. Gavenda

enc.    Discovery Preservation Notice

cc:     Jeri D. McCall @ First Home Bank (via electronic mail)
        Polina Lozovyi

# Exhibit D

## DISCOVERY PRESERVATION NOTICE

RE:    *First Home Bank/The One Technologies, LLC*
Loan No.: 9613445009
Our File No.: 20271

You are receiving this Discovery Preservation Notice in association with the default of The One Technologies, LLC, a New York limited liability company ("Borrower"), under the above-referenced loan with First Home Bank, a Florida banking corporation ("Lender").

Please be advised that Lender believes electronically stored information to be an important and irreplaceable source of discovery and/or evidence relating to potential litigation between Lender, Borrower, and Polina Lozovyi ("Guarantor"), regarding the Loan Documents, as defined in the Notice of Default and Demand Letter provided contemporaneously herewith.

Due to the potential litigation, the preservation of all information from Borrower's and Guarantor's computer systems, removable electronic media, and other locations is required. This includes, but is not limited to, email and other electronic communication, word processing documents, spreadsheets, databases, calendars, telephone logs, contact manager information, internet usage files, and network access information.

Accordingly, Borrower and Guarantor should also preserve the following platforms in the possession of Borrower and Guarantor or a third party under the control of Borrower and Guarantor (such as an employee or outside vendor under contract): databases, networks, computer systems, including legacy systems (hardware and software), servers, archives, backup or disaster recovery systems, tapes, discs, drives, cartridges and other storage media, laptops, personal computers, internet data, personal digital assistants, handheld wireless devices, mobile telephones, paging devices, and audio systems (including voicemail).

## PRESERVATION OBLIGATIONS

The laws and rules prohibiting destruction of evidence apply to electronically stored information in the same manner that they apply to other evidence. Due to its format, electronic information is easily deleted, modified, or corrupted. Accordingly, Borrower and Guarantor must take every reasonable step to preserve this information until a final resolution of this matter.

This includes, but is not limited to, an obligation to:

A.    Discontinue all data destruction and backup tape recycling policies;

B.    Preserve and not dispose of relevant hardware unless an exact replica of the device (a forensic image) is made;

C.    Preserve and not destroy passwords, decryption procedures (and accompanying software), network access codes, ID names, manuals, tutorials, written instructions, decompression or reconstruction software; and

# Exhibit D

D.    Maintain all other pertinent information and tools needed to access, review, and reconstruct the data and as may be necessary to access, view, and/or reconstruct all requested or potentially relevant electronic data.

## DESCRIPTION OF DATA SOUGHT

Due to potential litigation, the preservation of all information from Borrower's and Guarantor's computer systems, removable electronic media, and other locations, relating to the Loan Documents, including, but not limited to, all underlying negotiations, loan documentation, and the like, is required. This includes, but is not limited to, email and other electronic communication, word processing documents, spreadsheets, databases, calendars, telephone logs, contact manager information, Internet usage files, network access information, mini-secure digital cards, secure digital cards, 8 inch floppy drive, 5.25 inch floppy drive, 3.5 inch floppy drive, LS-120 high capacity floppy drive, USB thumb drive, CD-R, CD-RW, DVD-R, DVD-RW, tape drives, desktop hard drive, external storage hard drive, laptop hard drive, cellphone stored data, smart phone stored data, Blackberry stored data, iPad stored data, iPhone stored data, memory sticks, and/or flash drives.

I.    **Electronic Files.** You have an obligation to preserve all digital or analog electronic files in electronic format, regardless of whether hard copies of the information exist. This includes preserving:

A.    Active data (*i.e.*, data immediately and easily accessible on the client's systems today);

B.    Archived data (*i.e.*, data residing on backup tapes or other storage media);

C.    Deleted data (*i.e.*, data that has been deleted from a computer hard drive but is recoverable through computer forensic techniques);

D.    Legacy data (*i.e.*, data created on old or obsolete hardware or software); and

E.    Borrower and Guarantor must preserve active, archived, and legacy data including, but not limited to:

1.    Word-processed files, including drafts and revisions;

2.    Spreadsheets, including drafts and revisions;

3.    Databases;

4.    CAD (computer-aided design) files, including drafts and revisions;

5.    Presentation data or slide shows produced by presentation software (such as Microsoft PowerPoint);

6.    Graphs, charts and other data produced by project management software (such as Microsoft Project);

2

# Exhibit D

7.     Animations, images, audio, video, and audiovisual recordings, MP3 players, and voicemail files;

8.     Data generated by calendaring, task management, and personal information management (PIM) software (such as Microsoft Outlook or Lotus Notes);

9.     Data created with the use of personal data assistants (PDAs), such as PalmPilot, HP Jornada; Cassiopeia, or other Windows or Apple CE-based or Pocket PC devices;

10.     Data created with the use of document management software;

11.     Data created with the use of paper and electronic mail logging and routing software; and

12.     Relevant data transmitted or received in any Facebook, Instagram, Snapchat, or Twitter account.

F.     Borrower and Guarantor must preserve media used by Borrower's and Guarantor's computers including but not limited to:

1.     Magnetic, optical, or other storage media, including the hard drives or floppy disks used by Borrower's and Guarantor's computers;

2.     Backup media (*i.e.*, other hard drives, backup tapes, floppies, Jaz cartridges, CD-ROMs, mini-secure digital cards, secure digital cards, 8 inch floppy drive, 5.25 inch floppy drive, 3.5 inch floppy drive, LS-120 high capacity floppy drive, USB thumb drive, CD-R, CD-RW, DVD-R, DVD-RW, tape drives, desktop hard drive, external storage hard drive, laptop hard drive, cellphone stored data, smart phone stored data, Blackberry stored data, iPad stored data, iPhone stored data, memory sticks, and/or flash drives) and the software necessary to reconstruct the data contained on the media; and

3.     Archived media (you should retain a forensic image of any media no longer in service but used during the following time periods): from January 1, 2016, to the present.

II.   **Hardware.** Borrower and Guarantor have an obligation to preserve all electronic processing systems, even if they are replaced. This includes computer servers, stand-alone personal computers, hard drives, laptops, PDAs, and other electronic processing devices. Borrower and Guarantor should retain copies of any hardware no longer in service but used during the following time periods: At all times from January 1, 2017, to the present.

III.   **Emails.** You have an obligation to preserve all potentially relevant internal and external emails that were sent or received. Email must be preserved in electronic format, regardless of whether hard copies of the information exist. To the extent that you use a web based internet service for your emails (for example, Gmail, Outlook, Hotmail, Yahoo, AOL, and the like), identification of the email server should be supplied and that all emails currently

3

## Exhibit D

stored on your computer or other backup drives as referenced herein shall also be preserved.

IV.   **Internet Web Activity.** You have an obligation to preserve all records of Internet and Web-browser generated files in electronic format, regardless of whether hard copies of the information exist. This includes Internet and Web-browser- generated history files, caches, emails, and "cookies" files stored on backup media, emails or generated by an individual employed by Borrower and Guarantor.

V.    **Activity Logs.** Borrower and Guarantor must preserve all hard copy or electronic logs documenting computer use by Borrower and Guarantor.

VI.   **Supporting Information.** Borrower and Guarantor must preserve all supporting information relating to the requested electronic data and/or media including codebooks, keys, data dictionaries, diagrams, handbooks, or other supporting documents that aid in reading or interpreting database, media, email, hardware, software, or activity log information.

### DESCRIPTION OF DOCUMENTS AND MEDIA THAT SHOULD BE PRESERVED

I.    **Data Preservation.** Borrower and Guarantor should immediately preserve all data and information about the data (*i.e.*, backup activity logs and document retention policies) relating to documents maintained in the ordinary course of business for the employees listed below. This includes, but is not limited to, the information listed below.

    A.   Email and any relevant metadata, including message contents, header information, and email system logs that was sent or received by or is in the possession of the following parties and/or contains information about the following subjects:

        1.   Parties: Lender, Borrower, and Guarantor.

        2.   Subject Matters: the Loan Documents including, but not limited to, all underlying negotiations, loan documentation, and the like.

    B.   All active and deleted copies of any word processing files, spreadsheets, PowerPoint presentations, or other documents that are in the possession of the following parties and/or contain information about the following subjects:

        1.   Parties: Lender, Borrower, and Guarantor.

        2.   Subject Matters: the Loan Documents including, but not limited to, all underlying negotiations, loan documentation, and the like.

    C.   Databases and any information about the databases that are in the possession of the following parties and/or contain information about the following subjects:

        1.   Parties: Lender, Borrower, and Guarantor.

# Exhibit D

    2.     Subject Matters: the Loan Documents including, but not limited to, all underlying negotiations, loan documentation, and the like.

D.    All paper and/or electronic logs of computer system and network activity that pertain to electronic data storage that are in the possession of the following parties and/or contain information about the following subjects:

    1.     Parties: Lender, Borrower, and Guarantor.

    2.     Subject Matters: the Loan Documents including, but not limited to, all underlying negotiations, loan documentation, and the like.

E.    All active and deleted copies of any electronic calendars or scheduling programs, including programs maintained on PDAs that are in the possession of the following parties and/or contain information about the following subjects:

    1.     Parties: Lender, Borrower, and Guarantor.

    2.     Subject Matters: the Loan Documents including, but not limited to, all underlying negotiations, loan documentation, and the like.

F.    All active, archived, legacy, and deleted copies of any other electronic data that are in the possession of the following parties and/or contain information about the following subjects:

    1.     Parties: Lender, Borrower, and Guarantor.

    2.     Subject Matters: the Loan Documents including, but not limited to, all underlying negotiations, loan documentation, and the like.

G.    All active, archived, legacy, and deleted copies of any other electronic data that are related to any Twitter account, Facebook account, Instagram, or other social media account that are maintained by Borrower and Guarantor or that are in the possession of the following parties and/or contain information about the following subjects:

    1.     Parties: Lender, Borrower, and Guarantor.

    2.     Subject Matters: the Loan Documents including, but not limited to, all underlying negotiations, loan documentation, and the like.

II.    **Data Storage Devices.**

A.    <u>Online Data Storage.</u> If Borrower and Guarantor use online storage and/or direct access storage devices, they must immediately cease modifying or deleting any electronic data unless a computer forensic expert makes a forensic image of the electronic file or device, follows proper preservation protocols for assuring the accuracy of the file (*i.e.*, chain of custody), and makes the file available for litigation.

# Exhibit D

B.     <u>Offline Data Storage.</u> Offline data storage includes, but is not limited to, backup and archival media, floppy diskettes, magnetic, magneto-optical, and/or optical tapes and cartridges, DVDs, CDROMs, mini-secure digital cards, secure digital cards, 8 inch floppy drive, 5.25 inch floppy drive, 3.5 inch floppy drive, LS-120 high capacity floppy drive, USB thumb drive, CD-R, CD-RW, DVD-R, DVD-RW, tape drives, desktop hard drive, external storage hard drive, laptop hard drive, cellphone stored data, smart phone stored data, Blackberry stored data, iPad stored data, iPhone stored data, memory sticks, and/or flash drives, and other removable media. Borrower and Guarantor should immediately suspend all activity that might result in destruction or modification of all of the data stored on any offline media. This includes overwriting, recycling or erasing all or part of the media. This request includes, but is not limited to, media used to store data from personal computers, laptops, mainframe computers, and servers.

C.     <u>Data Storage Device Replacement.</u> If Borrower and Guarantor replace any electronic data storage devices, Borrower and Guarantor may not dispose of the storage devices.

D.     <u>Preservation of Storage Devices.</u> Borrower and Guarantor may not modify, delete or otherwise alter (*i.e.*, by data compression, disk de-fragmentation, or optimization routines) any electronic data unless a computer forensic expert makes a forensic image of the electronic file or device, follows proper preservation protocols for assuring the accuracy of the file *i.e.*, chain of custody), and makes the file available for litigation. The expert must make a forensic image of active files, restored versions of deleted files, and restored versions of deleted file fragments, hidden files, and directory listings. This includes, but is not limited to, preserving electronic data (stored on online or offline storage devices) that came from the following hardware or software applications:

1.     Fixed drives on stand-alone personal computers or laptops;

2.     Network servers and workstations; and

3.     Software application programs and utilities.

## PRESERVATION COMPLIANCE

I.     **Activity Log.** In order to show preservation compliance, Borrower and Guarantor must maintain a log, documenting all alterations or deletions made to any electronic data storage device or any electronic data processing system. The log should include changes and deletions made by supervisors, employees, contractors, vendors, or any other third parties.

II.     **Forensic Images.** Borrower and Guarantor must secure a forensic image copy (a bit-by-bit copy of a hard drive that ensures the computer system is not altered during the imaging process) of all electronic data contained on the personal computers and/or laptops of the individuals listed below. The forensic image should include active files, deleted files, deleted file fragments, hidden files, directories, and any other data contained on the computer. Borrower and Guarantor must also collect and store any offline or online storage

# Exhibit D

devices that contain data from any electronic processing devices for the individuals or business entities listed below.

    A.     Lender
    B.     Borrower
    C.     Guarantor

III.    **Chain of Custody.** For each piece of media that Borrower and Guarantor preserve, Borrower and Guarantor must document a complete chain of custody. A proper chain of custody will ensure that no material changes, alterations or modifications were made while the evidence was handled. Chain of custody documentation must indicate where the media has been, whose possession it has been in, and the reason for that possession.

IV.    **Electronic Data Created After This Discovery Preservation Notice.** For any electronic data created after this Discovery Preservation Notice or for any electronic processing systems used after this Discovery Preservation Notice, Borrower and Guarantor must take the proper steps to avoid destroying potentially relevant evidence. This includes following the above preservation protocols.

Compliance with Borrower's and Guarantor's preservation obligations includes forwarding a copy of this Discovery Preservation Notice to all individuals or organizations that are responsible for any of the items referred to in this Discovery Preservation Notice. If this Discovery Preservation Notice is in any respect unclear, please contact us immediately.

Dated: June 19, 2018.           **ANASTASI JELLUM, P.A.**

                        By: */s/ Garth G. Gavenda*
                            Garth G. Gavenda
                            14985 60th Street North
                            Stillwater, Minnesota 55082
                            Telephone: (651) 439-2951
                            Facsimile: (651) 439-1417
                            Garth.Gavenda@AJ-Law.com

                            ATTORNEYS FOR FIRST HOME BANK,
                            A FLORIDA BANKING CORPORATION

# Exhibit E



ANASTASI | JELLUM

14985 60ᵀᴴ STREET NORTH | STILLWATER, MN 55082
PHONE: 651-439-2951 | FAX: 651-439-1417 | AJ-LAW.COM

Garth G. Gavenda
Garth.Gavenda@AJ-Law.com
Direct: (651) 332-8312

**Certified Article Number**

9314 7699 0430 0047 8296 85

**SENDER'S RECORD**

June 19, 2018

The One Technologies, LLC
Attn: Polina Lozovyi
44 Court Street, Suite 1217
Brooklyn, New York 11201

**VIA REGULAR AND CERTIFIED MAIL,
RETURN RECEIPT REQUESTED**

RE:     *First Home Bank/The One Technologies, LLC*
        Loan No.: 9613445009
        Our File No.: 20271

## NOTICE OF DEFAULT AND DEMAND LETTER

Dear Ms. Lozovyi:

Please be advised that our law firm represents First Home Bank, a Florida banking corporation ("Lender"), with respect to various matters, including collection of the above-referenced loan **which is in default as described below.**

As you are aware, Lender is the current owner and holder of that certain promissory note executed by The One Technologies, LLC, a New York limited liability company ("Borrower"), dated August 8, 2017, in the original principal amount of Three Hundred Fifty Thousand and 00/100 Dollars ($350,000.00) ("Note").

The Note is secured, in part, by that certain security agreement executed by Borrower, in favor of Lender, dated August 8, 2017 ("Security Agreement"), granting to Lender a perfected security interest in, among other things, all equipment, inventory, accounts, instruments, chattel paper, general intangibles, and documents of Borrower (collectively, "Collateral").

The Note is further secured by that certain guaranty executed by Polina Lozovyi ("Guarantor"), in favor of Lender, dated August 8, 2017 ("Guaranty").

The Note, Security Agreement, Guaranty, and all other documents executed in connection therewith shall hereinafter sometimes be referred to collectively as the "Loan Documents". Unless otherwise defined herein, all capitalized terms used in this letter shall have the same meanings defined in the Loan Documents.

You are hereby advised that events of default have occurred, and are continuing, under the Note due to, among other things, Borrower's failure to make the monthly payments when due under the Note.

# Exhibit E

The One Technologies, LLC
June 19, 2018
Page 2

Due to the aforementioned continuing events of default, Lender hereby advises Borrower that it is exercising its right to accelerate all amounts due and owing under the Note. Lender hereby demands that Borrower remit to Lender the total amount due under the Note of Three Hundred Thirty-Nine Thousand Two Hundred Thirty-One and 66/100 Dollars ($339,231.66) ("Demand Amount"), which consists of outstanding principal of Three Hundred Thirty-Four Thousand Five Hundred Fifty-Two and 30/100 Dollars ($334,552.30), accrued but unpaid interest to June 18, 2018, of Three Thousand Seven Hundred Twelve and 16/100 Dollars ($3,712.16), which continues to accrue to the date of final payment at the present daily rate of Sixty-Eight and 74/100 Dollars ($68.74), late fees of Eight Hundred Thirty-Two and 20/100 Dollars ($832.20), a site inspection fee of One Hundred Thirty-Five and 00/100 Dollars ($135.00), plus attorneys' fees and costs incurred by Lender in the collection of the Note, all payable in **certified funds** by no later than June 29, 2018. **PARTIAL PAYMENT WILL NOT BE ACCEPTABLE.**

Please be advised that, should Borrower fail to pay the Demand Amount on or before June 29, 2018, Lender shall, in its sole discretion and without further notice, exercise any of its rights and remedies available under the Loan Documents, and at law, including, but not limited to, the following:

1.    Lender may, without further notice, file lawsuits seeking to obtain a judgment in the amounts due and owing under the Note against Borrower and Guarantor;

2.    Lender may exercise its right to foreclose on any mortgages or liens on real estate securing the Note, evict any individuals or businesses occupying those properties, and have those properties sold to the highest bidder;

3.    Lender may, without further notice, exercise its right to foreclose upon, levy upon, and/or sell the Collateral;

4.    Lender may, without further notice, exercise its right to collect rents due to Borrower directly from any tenants of Borrower or Guarantor that are located at any of the real estate properties that are subject to the Lender's mortgages or liens securing the Note and/or Guaranty;

5.    Lender may conduct discovery in aid of executing and collecting on any judgments that it obtains against Borrower and Guarantor, for the amounts due under the Note, which may require Borrower, Guarantor, their representatives, and others doing business with them to produce documents, information, and testimony regarding their assets;

6.    Lender may collect and enforce any judgments it obtains against Borrower and Guarantor for the amounts due under the Note by attaching, garnishing, freezing, or otherwise executing upon bank accounts, investment accounts, accounts receivable, trademarks, intellectual property, and other tangible and/or intangible property owned by Borrower and/or Guarantor;

# Exhibit E

The One Technologies, LLC
June 19, 2018
Page 3

7.  Lender may seek to have a court-appointed receiver conduct the business affairs of Borrower for the benefit of the Lender and other creditors of Borrower;

8.  Lender may report any defaulted debt and/or judgments owed by Borrower and Guarantor for the amounts due under the Note to credit reporting agencies; and/or,

9.  Lender may report the debts and/or judgments owed by Borrower and Guarantor for the amounts due under the Note to the U.S. Small Business Administration ("SBA"), for referral to the U.S. Treasury Department for further collection and enforcement proceedings. If that occurs, the U.S. Treasury Department may take any one or more of the following actions:

   a.  The Treasury Department may, under its Cross-Servicing Program, collect the debt owed under the Note by garnishing any employment wages that are earned by Borrower or Guarantor. This is accomplished by having the Treasury Department directly contact employers and require them to pay a substantial portion of their employee's earned wages to the Treasury Department instead of to the employee.

   b.  The Treasury Department may also, under its Cross-Servicing Program, trace and locate individuals and entities that owe monies to the federal government on SBA loans and then retain private collection agencies or direct government employees to pursue and collect from those debtors.

   c.  The Treasury Department may, in addition to utilizing the resources of its Cross-Servicing Program, also pursue remedies through its Treasury Offset Program ("TOP") against Borrower and Guarantor. Under TOP, the federal government collects delinquent debt owed on SBA loans by administratively offsetting the debts owed to the Treasury Department against any federal funds that may be due and payable to SBA borrowers and other SBA loan obligors from federal and state sources, such as tax refunds, wages, retirement checks, contractor payments, and Social Security Administration payments. Thus, the federal government can offset that money owed to the Treasury Department against any monies that may be due or payable to Borrower or Guarantor, and Borrower or Guarantor may lose their right to receive tax refunds, Social Security payments, and other monies from the U.S. government until such time as the SBA debt is repaid.

Additionally, please be advised, pursuant to the terms of the Security Agreement, Borrower shall not sell, lease, license, or otherwise transfer or liquidate all, or any part, of the Collateral without Lender's prior written consent.

## Exhibit E

The One Technologies, LLC
June 19, 2018
Page 4

Nothing contained in this letter shall be deemed a waiver of any other default or event of default not specifically described herein, nor a waiver of any rights, remedies, or recourse available to Lender, nor any election of remedies resulting from the defaults discussed herein, nor any other defaults which may exist with respect to the indebtedness evidenced by the Note.

Thank you for your prompt attention and response to this matter. Please direct all communications and payments to our attention.

Sincerely,

Garth G. Gavenda

enc.    Discovery Preservation Notice

cc:     Jeri D. McCall @ First Home Bank (via electronic mail)
        Polina Lozovyi

# Exhibit E

## DISCOVERY PRESERVATION NOTICE

RE:   *First Home Bank/The One Technologies, LLC*
      Loan No.: 9613445009
      Our File No.: 20271

You are receiving this Discovery Preservation Notice in association with the default of The One Technologies, LLC, a New York limited liability company ("Borrower"), under the above-referenced loan with First Home Bank, a Florida banking corporation ("Lender").

Please be advised that Lender believes electronically stored information to be an important and irreplaceable source of discovery and/or evidence relating to potential litigation between Lender, Borrower, and Polina Lozovyi ("Guarantor"), regarding the Loan Documents, as defined in the Notice of Default and Demand Letter provided contemporaneously herewith.

Due to the potential litigation, the preservation of all information from Borrower's and Guarantor's computer systems, removable electronic media, and other locations is required. This includes, but is not limited to, email and other electronic communication, word processing documents, spreadsheets, databases, calendars, telephone logs, contact manager information, internet usage files, and network access information.

Accordingly, Borrower and Guarantor should also preserve the following platforms in the possession of Borrower and Guarantor or a third party under the control of Borrower and Guarantor (such as an employee or outside vendor under contract): databases, networks, computer systems, including legacy systems (hardware and software), servers, archives, backup or disaster recovery systems, tapes, discs, drives, cartridges and other storage media, laptops, personal computers, internet data, personal digital assistants, handheld wireless devices, mobile telephones, paging devices, and audio systems (including voicemail).

## PRESERVATION OBLIGATIONS

The laws and rules prohibiting destruction of evidence apply to electronically stored information in the same manner that they apply to other evidence. Due to its format, electronic information is easily deleted, modified, or corrupted. Accordingly, Borrower and Guarantor must take every reasonable step to preserve this information until a final resolution of this matter.

This includes, but is not limited to, an obligation to:

A.   Discontinue all data destruction and backup tape recycling policies;

B.   Preserve and not dispose of relevant hardware unless an exact replica of the device (a forensic image) is made;

C.   Preserve and not destroy passwords, decryption procedures (and accompanying software), network access codes, ID names, manuals, tutorials, written instructions, decompression or reconstruction software; and

# Exhibit E

D.  Maintain all other pertinent information and tools needed to access, review, and reconstruct the data and as may be necessary to access, view, and/or reconstruct all requested or potentially relevant electronic data.

## DESCRIPTION OF DATA SOUGHT

Due to potential litigation, the preservation of all information from Borrower's and Guarantor's computer systems, removable electronic media, and other locations, relating to the Loan Documents, including, but not limited to, all underlying negotiations, loan documentation, and the like, is required. This includes, but is not limited to, email and other electronic communication, word processing documents, spreadsheets, databases, calendars, telephone logs, contact manager information, Internet usage files, network access information, mini-secure digital cards, secure digital cards, 8 inch floppy drive, 5.25 inch floppy drive, 3.5 inch floppy drive, LS-120 high capacity floppy drive, USB thumb drive, CD-R, CD-RW, DVD-R, DVD-RW, tape drives, desktop hard drive, external storage hard drive, laptop hard drive, cellphone stored data, smart phone stored data, Blackberry stored data, iPad stored data, iPhone stored data, memory sticks, and/or flash drives.

I.  **Electronic Files.** You have an obligation to preserve all digital or analog electronic files in electronic format, regardless of whether hard copies of the information exist. This includes preserving:

A.  Active data (*i.e.*, data immediately and easily accessible on the client's systems today);

B.  Archived data (*i.e.*, data residing on backup tapes or other storage media);

C.  Deleted data (*i.e.*, data that has been deleted from a computer hard drive but is recoverable through computer forensic techniques);

D.  Legacy data (*i.e.*, data created on old or obsolete hardware or software); and

E.  Borrower and Guarantor must preserve active, archived, and legacy data including, but not limited to:

1.  Word-processed files, including drafts and revisions;

2.  Spreadsheets, including drafts and revisions;

3.  Databases;

4.  CAD (computer-aided design) files, including drafts and revisions;

5.  Presentation data or slide shows produced by presentation software (such as Microsoft PowerPoint);

6.  Graphs, charts and other data produced by project management software (such as Microsoft Project);

2

# Exhibit E

7.   Animations, images, audio, video, and audiovisual recordings, MP3 players, and voicemail files;

8.   Data generated by calendaring, task management, and personal information management (PIM) software (such as Microsoft Outlook or Lotus Notes);

9.   Data created with the use of personal data assistants (PDAs), such as PalmPilot, HP Jornada; Cassiopeia, or other Windows or Apple CE-based or Pocket PC devices;

10.  Data created with the use of document management software;

11.  Data created with the use of paper and electronic mail logging and routing software; and

12.  Relevant data transmitted or received in any Facebook, Instagram, Snapchat, or Twitter account.

F.   Borrower and Guarantor must preserve media used by Borrower's and Guarantor's computers including but not limited to:

1.   Magnetic, optical, or other storage media, including the hard drives or floppy disks used by Borrower's and Guarantor's computers;

2.   Backup media (*i.e.*, other hard drives, backup tapes, floppies, Jaz cartridges, CD-ROMs, mini-secure digital cards, secure digital cards, 8 inch floppy drive, 5.25 inch floppy drive, 3.5 inch floppy drive, LS-120 high capacity floppy drive, USB thumb drive, CD-R, CD-RW, DVD-R, DVD-RW, tape drives, desktop hard drive, external storage hard drive, laptop hard drive, cellphone stored data, smart phone stored data, Blackberry stored data, iPad stored data, iPhone stored data, memory sticks, and/or flash drives) and the software necessary to reconstruct the data contained on the media; and

3.   Archived media (you should retain a forensic image of any media no longer in service but used during the following time periods): from January 1, 2016, to the present.

II.  **Hardware.** Borrower and Guarantor have an obligation to preserve all electronic processing systems, even if they are replaced. This includes computer servers, stand-alone personal computers, hard drives, laptops, PDAs, and other electronic processing devices. Borrower and Guarantor should retain copies of any hardware no longer in service but used during the following time periods: At all times from January 1, 2017, to the present.

III. **Emails.** You have an obligation to preserve all potentially relevant internal and external emails that were sent or received. Email must be preserved in electronic format, regardless of whether hard copies of the information exist. To the extent that you use a web based internet service for your emails (for example, Gmail, Outlook, Hotmail, Yahoo, AOL, and the like), identification of the email server should be supplied and that all emails currently

3

## Exhibit E

stored on your computer or other backup drives as referenced herein shall also be preserved.

IV.   **Internet Web Activity.** You have an obligation to preserve all records of Internet and Web-browser generated files in electronic format, regardless of whether hard copies of the information exist. This includes Internet and Web-browser- generated history files, caches, emails, and "cookies" files stored on backup media, emails or generated by an individual employed by Borrower and Guarantor.

V.   **Activity Logs.** Borrower and Guarantor must preserve all hard copy or electronic logs documenting computer use by Borrower and Guarantor.

VI.   **Supporting Information.** Borrower and Guarantor must preserve all supporting information relating to the requested electronic data and/or media including codebooks, keys, data dictionaries, diagrams, handbooks, or other supporting documents that aid in reading or interpreting database, media, email, hardware, software, or activity log information.

### DESCRIPTION OF DOCUMENTS AND MEDIA THAT SHOULD BE PRESERVED

I.   **Data Preservation.** Borrower and Guarantor should immediately preserve all data and information about the data (*i.e.*, backup activity logs and document retention policies) relating to documents maintained in the ordinary course of business for the employees listed below. This includes, but is not limited to, the information listed below.

A.   Email and any relevant metadata, including message contents, header information, and email system logs that was sent or received by or is in the possession of the following parties and/or contains information about the following subjects:

   1.   Parties: Lender, Borrower, and Guarantor.

   2.   Subject Matters: the Loan Documents including, but not limited to, all underlying negotiations, loan documentation, and the like.

B.   All active and deleted copies of any word processing files, spreadsheets, PowerPoint presentations, or other documents that are in the possession of the following parties and/or contain information about the following subjects:

   1.   Parties: Lender, Borrower, and Guarantor.

   2.   Subject Matters: the Loan Documents including, but not limited to, all underlying negotiations, loan documentation, and the like.

C.   Databases and any information about the databases that are in the possession of the following parties and/or contain information about the following subjects:

   1.   Parties: Lender, Borrower, and Guarantor.

4

# Exhibit E

    2.    Subject Matters: the Loan Documents including, but not limited to, all underlying negotiations, loan documentation, and the like.

D.    All paper and/or electronic logs of computer system and network activity that pertain to electronic data storage that are in the possession of the following parties and/or contain information about the following subjects:

    1.    Parties: Lender, Borrower, and Guarantor.

    2.    Subject Matters: the Loan Documents including, but not limited to, all underlying negotiations, loan documentation, and the like.

E.    All active and deleted copies of any electronic calendars or scheduling programs, including programs maintained on PDAs that are in the possession of the following parties and/or contain information about the following subjects:

    1.    Parties: Lender, Borrower, and Guarantor.

    2.    Subject Matters: the Loan Documents including, but not limited to, all underlying negotiations, loan documentation, and the like.

F.    All active, archived, legacy, and deleted copies of any other electronic data that are in the possession of the following parties and/or contain information about the following subjects:

    1.    Parties: Lender, Borrower, and Guarantor.

    2.    Subject Matters: the Loan Documents including, but not limited to, all underlying negotiations, loan documentation, and the like.

G.    All active, archived, legacy, and deleted copies of any other electronic data that are related to any Twitter account, Facebook account, Instagram, or other social media account that are maintained by Borrower and Guarantor or that are in the possession of the following parties and/or contain information about the following subjects:

    1.    Parties: Lender, Borrower, and Guarantor.

    2.    Subject Matters: the Loan Documents including, but not limited to, all underlying negotiations, loan documentation, and the like.

II.    **Data Storage Devices.**

A.    <u>Online Data Storage.</u> If Borrower and Guarantor use online storage and/or direct access storage devices, they must immediately cease modifying or deleting any electronic data unless a computer forensic expert makes a forensic image of the electronic file or device, follows proper preservation protocols for assuring the accuracy of the file (*i.e.*, chain of custody), and makes the file available for litigation.

5

# Exhibit E

B.    <u>Offline Data Storage.</u> Offline data storage includes, but is not limited to, backup and archival media, floppy diskettes, magnetic, magneto-optical, and/or optical tapes and cartridges, DVDs, CDROMs, mini-secure digital cards, secure digital cards, 8 inch floppy drive, 5.25 inch floppy drive, 3.5 inch floppy drive, LS-120 high capacity floppy drive, USB thumb drive, CD-R, CD-RW, DVD-R, DVD-RW, tape drives, desktop hard drive, external storage hard drive, laptop hard drive, cellphone stored data, smart phone stored data, Blackberry stored data, iPad stored data, iPhone stored data, memory sticks, and/or flash drives, and other removable media. Borrower and Guarantor should immediately suspend all activity that might result in destruction or modification of all of the data stored on any offline media. This includes overwriting, recycling or erasing all or part of the media. This request includes, but is not limited to, media used to store data from personal computers, laptops, mainframe computers, and servers.

C.    <u>Data Storage Device Replacement.</u> If Borrower and Guarantor replace any electronic data storage devices, Borrower and Guarantor may not dispose of the storage devices.

D.    <u>Preservation of Storage Devices.</u> Borrower and Guarantor may not modify, delete or otherwise alter (*i.e.*, by data compression, disk de-fragmentation, or optimization routines) any electronic data unless a computer forensic expert makes a forensic image of the electronic file or device, follows proper preservation protocols for assuring the accuracy of the file *i.e.*, chain of custody), and makes the file available for litigation. The expert must make a forensic image of active files, restored versions of deleted files, and restored versions of deleted file fragments, hidden files, and directory listings. This includes, but is not limited to, preserving electronic data (stored on online or offline storage devices) that came from the following hardware or software applications:

1.    Fixed drives on stand-alone personal computers or laptops;

2.    Network servers and workstations; and

3.    Software application programs and utilities.

## PRESERVATION COMPLIANCE

I.    **Activity Log.** In order to show preservation compliance, Borrower and Guarantor must maintain a log, documenting all alterations or deletions made to any electronic data storage device or any electronic data processing system. The log should include changes and deletions made by supervisors, employees, contractors, vendors, or any other third parties.

II.   **Forensic Images.** Borrower and Guarantor must secure a forensic image copy (a bit-by-bit copy of a hard drive that ensures the computer system is not altered during the imaging process) of all electronic data contained on the personal computers and/or laptops of the individuals listed below. The forensic image should include active files, deleted files, deleted file fragments, hidden files, directories, and any other data contained on the computer. Borrower and Guarantor must also collect and store any offline or online storage

6

# Exhibit E

devices that contain data from any electronic processing devices for the individuals or business entities listed below.

    A.     Lender
    B.     Borrower
    C.     Guarantor

III.    **Chain of Custody.** For each piece of media that Borrower and Guarantor preserve, Borrower and Guarantor must document a complete chain of custody. A proper chain of custody will ensure that no material changes, alterations or modifications were made while the evidence was handled. Chain of custody documentation must indicate where the media has been, whose possession it has been in, and the reason for that possession.

IV.    **Electronic Data Created After This Discovery Preservation Notice.** For any electronic data created after this Discovery Preservation Notice or for any electronic processing systems used after this Discovery Preservation Notice, Borrower and Guarantor must take the proper steps to avoid destroying potentially relevant evidence. This includes following the above preservation protocols.

Compliance with Borrower's and Guarantor's preservation obligations includes forwarding a copy of this Discovery Preservation Notice to all individuals or organizations that are responsible for any of the items referred to in this Discovery Preservation Notice. If this Discovery Preservation Notice is in any respect unclear, please contact us immediately.

Dated: June 19, 2018.        **ANASTASI JELLUM, P.A.**

By: */s/ Garth G. Gavenda*
    Garth G. Gavenda
    14985 60th Street North
    Stillwater, Minnesota 55082
    Telephone: (651) 439-2951
    Facsimile: (651) 439-1417
    Garth.Gavenda@AJ-Law.com

ATTORNEYS FOR FIRST HOME BANK,
A FLORIDA BANKING CORPORATION

## Exhibit E

 ANASTASI | JELLUM

YOUR LEGAL DEPARTMENT™

14985 60ᵀᴴ STREET NORTH | STILLWATER, MN 55082
PHONE: 651-439-2951 | FAX: 651-439-1417 | AJ-LAW.COM

Garth G. Gavenda
Garth.Gavenda@AJ-Law.com
Direct: (651) 332-8312

**Certified Article Number**

9314 7699 0430 0047 8300 01

**SENDER'S RECORD**

June 19, 2018

Polina Lozovyi
2848 Brighton 7th Street, 9F
Brooklyn, New York 11235

**VIA REGULAR AND CERTIFIED MAIL,
RETURN RECEIPT REQUESTED**

RE:   *First Home Bank/The One Technologies, LLC*
      Loan No.: 9613445009
      Our File No.: 20271

### NOTICE OF DEFAULT AND DEMAND LETTER

Dear Ms. Lozovyi:

Please be advised that our law firm represents First Home Bank, a Florida banking corporation ("Lender"), with respect to various matters, including collection of the above-referenced loan **which is in default** as described in the enclosed copy of the notice of default and demand letter ("Demand Letter"), which has been sent to The One Technologies, LLC, a New York limited liability company ("Borrower").

As you know, you unconditionally guaranteed the above-referenced loan as evidenced by that certain Guaranty executed by you, in favor of Lender, dated August 8, 2017.

Demand is hereby made that you, as guarantor of the above-referenced loan, make payment to Lender for the Demand Amount, as specified in the enclosed Demand Letter. This correspondence constitutes the notice of default under the above-referenced loan.

Should Borrower and/or you fail to pay the Demand Amount on or before June 29, 2018, Lender shall pursue all legal remedies available to it to collect the Demand Amount including, but not limited to, commencement of a lawsuit to obtain a money judgment against Borrower and you, jointly and severally.

Nothing contained in this letter shall be deemed a waiver of any other default or event of default not specifically described in the Demand Letter, nor a waiver of any rights, remedies, or recourse available to Lender, nor any election of remedies resulting from the defaults discussed in the Demand Letter, or any other defaults which may exist with respect to the above-referenced loan.

## Exhibit E

Polina Lozovyi
June 19, 2018
Page 2

Thank you for your prompt attention and response to this matter. Please direct all communications and payments to our attention.

Sincerely,

Garth G. Gavenda

enc.    Notice of Default and Demand Letter
        Discovery Preservation Notice

cc:     Jeri D. McCall @ First Home Bank (via electronic mail)

## Exhibit E

 ANASTASI | JELLUM
YOUR LEGAL DEPARTMENT®

14985 60ᵀᴴ STREET NORTH | STILLWATER, MN 55082
PHONE: 651-439-2951 | FAX: 651-439-1417 | AJ-LAW.COM

Garth G. Gavenda
Garth.Gavenda@AJ-Law.com
Direct: (651) 332-8312

**Certified Article Number**

9314 7699 0430 0047 8296 85

**SENDER'S RECORD**

June 19, 2018

The One Technologies, LLC
Attn: Polina Lozovyi
44 Court Street, Suite 1217
Brooklyn, New York 11201

**VIA REGULAR AND CERTIFIED MAIL,
RETURN RECEIPT REQUESTED**

RE:   *First Home Bank/The One Technologies, LLC*
      Loan No.: 9613445009
      Our File No.: 20271

## NOTICE OF DEFAULT AND DEMAND LETTER

Dear Ms. Lozovyi:

Please be advised that our law firm represents First Home Bank, a Florida banking corporation ("Lender"), with respect to various matters, including collection of the above-referenced loan **which is in default as described below**.

As you are aware, Lender is the current owner and holder of that certain promissory note executed by The One Technologies, LLC, a New York limited liability company ("Borrower"), dated August 8, 2017, in the original principal amount of Three Hundred Fifty Thousand and 00/100 Dollars ($350,000.00) ("Note").

The Note is secured, in part, by that certain security agreement executed by Borrower, in favor of Lender, dated August 8, 2017 ("Security Agreement"), granting to Lender a perfected security interest in, among other things, all equipment, inventory, accounts, instruments, chattel paper, general intangibles, and documents of Borrower (collectively, "Collateral").

The Note is further secured by that certain guaranty executed by Polina Lozovyi ("Guarantor"), in favor of Lender, dated August 8, 2017 ("Guaranty").

The Note, Security Agreement, Guaranty, and all other documents executed in connection therewith shall hereinafter sometimes be referred to collectively as the "Loan Documents". Unless otherwise defined herein, all capitalized terms used in this letter shall have the same meanings defined in the Loan Documents.

You are hereby advised that events of default have occurred, and are continuing, under the Note due to, among other things, Borrower's failure to make the monthly payments when due under the Note.

# Exhibit E

The One Technologies, LLC
June 19, 2018
Page 2

Due to the aforementioned continuing events of default, Lender hereby advises Borrower that it is exercising its right to accelerate all amounts due and owing under the Note. Lender hereby demands that Borrower remit to Lender the total amount due under the Note of Three Hundred Thirty-Nine Thousand Two Hundred Thirty-One and 66/100 Dollars ($339,231.66) ("Demand Amount"), which consists of outstanding principal of Three Hundred Thirty-Four Thousand Five Hundred Fifty-Two and 30/100 Dollars ($334,552.30), accrued but unpaid interest to June 18, 2018, of Three Thousand Seven Hundred Twelve and 16/100 Dollars ($3,712.16), which continues to accrue to the date of final payment at the present daily rate of Sixty-Eight and 74/100 Dollars ($68.74), late fees of Eight Hundred Thirty-Two and 20/100 Dollars ($832.20), a site inspection fee of One Hundred Thirty-Five and 00/100 Dollars ($135.00), plus attorneys' fees and costs incurred by Lender in the collection of the Note, all payable in **certified funds** by no later than June 29, 2018. **PARTIAL PAYMENT WILL NOT BE ACCEPTABLE.**

Please be advised that, should Borrower fail to pay the Demand Amount on or before June 29, 2018, Lender shall, in its sole discretion and without further notice, exercise any of its rights and remedies available under the Loan Documents, and at law, including, but not limited to, the following:

1. Lender may, without further notice, file lawsuits seeking to obtain a judgment in the amounts due and owing under the Note against Borrower and Guarantor;

2. Lender may exercise its right to foreclose on any mortgages or liens on real estate securing the Note, evict any individuals or businesses occupying those properties, and have those properties sold to the highest bidder;

3. Lender may, without further notice, exercise its right to foreclose upon, levy upon, and/or sell the Collateral;

4. Lender may, without further notice, exercise its right to collect rents due to Borrower directly from any tenants of Borrower or Guarantor that are located at any of the real estate properties that are subject to the Lender's mortgages or liens securing the Note and/or Guaranty;

5. Lender may conduct discovery in aid of executing and collecting on any judgments that it obtains against Borrower and Guarantor, for the amounts due under the Note, which may require Borrower, Guarantor, their representatives, and others doing business with them to produce documents, information, and testimony regarding their assets;

6. Lender may collect and enforce any judgments it obtains against Borrower and Guarantor for the amounts due under the Note by attaching, garnishing, freezing, or otherwise executing upon bank accounts, investment accounts, accounts receivable, trademarks, intellectual property, and other tangible and/or intangible property owned by Borrower and/or Guarantor;

# Exhibit E

The One Technologies, LLC
June 19, 2018
Page 3

7. Lender may seek to have a court-appointed receiver conduct the business affairs of Borrower for the benefit of the Lender and other creditors of Borrower;

8. Lender may report any defaulted debt and/or judgments owed by Borrower and Guarantor for the amounts due under the Note to credit reporting agencies; and/or,

9. Lender may report the debts and/or judgments owed by Borrower and Guarantor for the amounts due under the Note to the U.S. Small Business Administration ("SBA"), for referral to the U.S. Treasury Department for further collection and enforcement proceedings. If that occurs, the U.S. Treasury Department may take any one or more of the following actions:

a. The Treasury Department may, under its Cross-Servicing Program, collect the debt owed under the Note by garnishing any employment wages that are earned by Borrower or Guarantor. This is accomplished by having the Treasury Department directly contact employers and require them to pay a substantial portion of their employee's earned wages to the Treasury Department instead of to the employee.

b. The Treasury Department may also, under its Cross-Servicing Program, trace and locate individuals and entities that owe monies to the federal government on SBA loans and then retain private collection agencies or direct government employees to pursue and collect from those debtors.

c. The Treasury Department may, in addition to utilizing the resources of its Cross-Servicing Program, also pursue remedies through its Treasury Offset Program ("TOP") against Borrower and Guarantor. Under TOP, the federal government collects delinquent debt owed on SBA loans by administratively offsetting the debts owed to the Treasury Department against any federal funds that may be due and payable to SBA borrowers and other SBA loan obligors from federal and state sources, such as tax refunds, wages, retirement checks, contractor payments, and Social Security Administration payments. Thus, the federal government can offset that money owed to the Treasury Department against any monies that may be due or payable to Borrower or Guarantor, and Borrower or Guarantor may lose their right to receive tax refunds, Social Security payments, and other monies from the U.S. government until such time as the SBA debt is repaid.

Additionally, please be advised, pursuant to the terms of the Security Agreement, Borrower shall not sell, lease, license, or otherwise transfer or liquidate all, or any part, of the Collateral without Lender's prior written consent.

# Exhibit E

The One Technologies, LLC
June 19, 2018
Page 4

Nothing contained in this letter shall be deemed a waiver of any other default or event of default not specifically described herein, nor a waiver of any rights, remedies, or recourse available to Lender, nor any election of remedies resulting from the defaults discussed herein, nor any other defaults which may exist with respect to the indebtedness evidenced by the Note.

Thank you for your prompt attention and response to this matter. Please direct all communications and payments to our attention.

Sincerely,

Garth G. Gavenda

enc.    Discovery Preservation Notice

cc:     Jeri D. McCall @ First Home Bank (via electronic mail)
        Polina Lozovyi

# Exhibit E

## DISCOVERY PRESERVATION NOTICE

RE:   *First Home Bank/The One Technologies, LLC*
      Loan No.: 9613445009
      Our File No.: 20271

You are receiving this Discovery Preservation Notice in association with the default of The One Technologies, LLC, a New York limited liability company ("Borrower"), under the above-referenced loan with First Home Bank, a Florida banking corporation ("Lender").

Please be advised that Lender believes electronically stored information to be an important and irreplaceable source of discovery and/or evidence relating to potential litigation between Lender, Borrower, and Polina Lozovyi ("Guarantor"), regarding the Loan Documents, as defined in the Notice of Default and Demand Letter provided contemporaneously herewith.

Due to the potential litigation, the preservation of all information from Borrower's and Guarantor's computer systems, removable electronic media, and other locations is required. This includes, but is not limited to, email and other electronic communication, word processing documents, spreadsheets, databases, calendars, telephone logs, contact manager information, internet usage files, and network access information.

Accordingly, Borrower and Guarantor should also preserve the following platforms in the possession of Borrower and Guarantor or a third party under the control of Borrower and Guarantor (such as an employee or outside vendor under contract): databases, networks, computer systems, including legacy systems (hardware and software), servers, archives, backup or disaster recovery systems, tapes, discs, drives, cartridges and other storage media, laptops, personal computers, internet data, personal digital assistants, handheld wireless devices, mobile telephones, paging devices, and audio systems (including voicemail).

## PRESERVATION OBLIGATIONS

The laws and rules prohibiting destruction of evidence apply to electronically stored information in the same manner that they apply to other evidence. Due to its format, electronic information is easily deleted, modified, or corrupted. Accordingly, Borrower and Guarantor must take every reasonable step to preserve this information until a final resolution of this matter.

This includes, but is not limited to, an obligation to:

A.   Discontinue all data destruction and backup tape recycling policies;

B.   Preserve and not dispose of relevant hardware unless an exact replica of the device (a forensic image) is made;

C.   Preserve and not destroy passwords, decryption procedures (and accompanying software), network access codes, ID names, manuals, tutorials, written instructions, decompression or reconstruction software; and

# Exhibit E

D.   Maintain all other pertinent information and tools needed to access, review, and reconstruct the data and as may be necessary to access, view, and/or reconstruct all requested or potentially relevant electronic data.

## DESCRIPTION OF DATA SOUGHT

Due to potential litigation, the preservation of all information from Borrower's and Guarantor's computer systems, removable electronic media, and other locations, relating to the Loan Documents, including, but not limited to, all underlying negotiations, loan documentation, and the like, is required. This includes, but is not limited to, email and other electronic communication, word processing documents, spreadsheets, databases, calendars, telephone logs, contact manager information, Internet usage files, network access information, mini-secure digital cards, secure digital cards, 8 inch floppy drive, 5.25 inch floppy drive, 3.5 inch floppy drive, LS-120 high capacity floppy drive, USB thumb drive, CD-R, CD-RW, DVD-R, DVD-RW, tape drives, desktop hard drive, external storage hard drive, laptop hard drive, cellphone stored data, smart phone stored data, Blackberry stored data, iPad stored data, iPhone stored data, memory sticks, and/or flash drives.

I.   **Electronic Files.** You have an obligation to preserve all digital or analog electronic files in electronic format, regardless of whether hard copies of the information exist. This includes preserving:

A.   Active data (*i.e.*, data immediately and easily accessible on the client's systems today);

B.   Archived data (*i.e.*, data residing on backup tapes or other storage media);

C.   Deleted data (*i.e.*, data that has been deleted from a computer hard drive but is recoverable through computer forensic techniques);

D.   Legacy data (*i.e.*, data created on old or obsolete hardware or software); and

E.   Borrower and Guarantor must preserve active, archived, and legacy data including, but not limited to:

1.   Word-processed files, including drafts and revisions;

2.   Spreadsheets, including drafts and revisions;

3.   Databases;

4.   CAD (computer-aided design) files, including drafts and revisions;

5.   Presentation data or slide shows produced by presentation software (such as Microsoft PowerPoint);

6.   Graphs, charts and other data produced by project management software (such as Microsoft Project);

2

# Exhibit E

7. Animations, images, audio, video, and audiovisual recordings, MP3 players, and voicemail files;

8. Data generated by calendaring, task management, and personal information management (PIM) software (such as Microsoft Outlook or Lotus Notes);

9. Data created with the use of personal data assistants (PDAs), such as PalmPilot, HP Jornada; Cassiopeia, or other Windows or Apple CE-based or Pocket PC devices;

10. Data created with the use of document management software;

11. Data created with the use of paper and electronic mail logging and routing software; and

12. Relevant data transmitted or received in any Facebook, Instagram, Snapchat, or Twitter account.

F. Borrower and Guarantor must preserve media used by Borrower's and Guarantor's computers including but not limited to:

1. Magnetic, optical, or other storage media, including the hard drives or floppy disks used by Borrower's and Guarantor's computers;

2. Backup media (*i.e.*, other hard drives, backup tapes, floppies, Jaz cartridges, CD-ROMs, mini-secure digital cards, secure digital cards, 8 inch floppy drive, 5.25 inch floppy drive, 3.5 inch floppy drive, LS-120 high capacity floppy drive, USB thumb drive, CD-R, CD-RW, DVD-R, DVD-RW, tape drives, desktop hard drive, external storage hard drive, laptop hard drive, cellphone stored data, smart phone stored data, Blackberry stored data, iPad stored data, iPhone stored data, memory sticks, and/or flash drives) and the software necessary to reconstruct the data contained on the media; and

3. Archived media (you should retain a forensic image of any media no longer in service but used during the following time periods): from January 1, 2016, to the present.

II. **Hardware.** Borrower and Guarantor have an obligation to preserve all electronic processing systems, even if they are replaced. This includes computer servers, stand-alone personal computers, hard drives, laptops, PDAs, and other electronic processing devices. Borrower and Guarantor should retain copies of any hardware no longer in service but used during the following time periods: At all times from January 1, 2017, to the present.

III. **Emails.** You have an obligation to preserve all potentially relevant internal and external emails that were sent or received. Email must be preserved in electronic format, regardless of whether hard copies of the information exist. To the extent that you use a web based internet service for your emails (for example, Gmail, Outlook, Hotmail, Yahoo, AOL, and the like), identification of the email server should be supplied and that all emails currently

3

# Exhibit E

stored on your computer or other backup drives as referenced herein shall also be preserved.

IV.   **Internet Web Activity.** You have an obligation to preserve all records of Internet and Web-browser generated files in electronic format, regardless of whether hard copies of the information exist. This includes Internet and Web-browser- generated history files, caches, emails, and "cookies" files stored on backup media, emails or generated by an individual employed by Borrower and Guarantor.

V.   **Activity Logs.** Borrower and Guarantor must preserve all hard copy or electronic logs documenting computer use by Borrower and Guarantor.

VI.   **Supporting Information.** Borrower and Guarantor must preserve all supporting information relating to the requested electronic data and/or media including codebooks, keys, data dictionaries, diagrams, handbooks, or other supporting documents that aid in reading or interpreting database, media, email, hardware, software, or activity log information.

## DESCRIPTION OF DOCUMENTS AND MEDIA THAT SHOULD BE PRESERVED

I.   **Data Preservation.** Borrower and Guarantor should immediately preserve all data and information about the data (*i.e.*, backup activity logs and document retention policies) relating to documents maintained in the ordinary course of business for the employees listed below. This includes, but is not limited to, the information listed below.

A.   Email and any relevant metadata, including message contents, header information, and email system logs that was sent or received by or is in the possession of the following parties and/or contains information about the following subjects:

1.   Parties: Lender, Borrower, and Guarantor.

2.   Subject Matters: the Loan Documents including, but not limited to, all underlying negotiations, loan documentation, and the like.

B.   All active and deleted copies of any word processing files, spreadsheets, PowerPoint presentations, or other documents that are in the possession of the following parties and/or contain information about the following subjects:

1.   Parties: Lender, Borrower, and Guarantor.

2.   Subject Matters: the Loan Documents including, but not limited to, all underlying negotiations, loan documentation, and the like.

C.   Databases and any information about the databases that are in the possession of the following parties and/or contain information about the following subjects:

1.   Parties: Lender, Borrower, and Guarantor.

4

# Exhibit E

    2.    Subject Matters: the Loan Documents including, but not limited to, all underlying negotiations, loan documentation, and the like.

D.    All paper and/or electronic logs of computer system and network activity that pertain to electronic data storage that are in the possession of the following parties and/or contain information about the following subjects:

    1.    Parties: Lender, Borrower, and Guarantor.

    2.    Subject Matters: the Loan Documents including, but not limited to, all underlying negotiations, loan documentation, and the like.

E.    All active and deleted copies of any electronic calendars or scheduling programs, including programs maintained on PDAs that are in the possession of the following parties and/or contain information about the following subjects:

    1.    Parties: Lender, Borrower, and Guarantor.

    2.    Subject Matters: the Loan Documents including, but not limited to, all underlying negotiations, loan documentation, and the like.

F.    All active, archived, legacy, and deleted copies of any other electronic data that are in the possession of the following parties and/or contain information about the following subjects:

    1.    Parties: Lender, Borrower, and Guarantor.

    2.    Subject Matters: the Loan Documents including, but not limited to, all underlying negotiations, loan documentation, and the like.

G.    All active, archived, legacy, and deleted copies of any other electronic data that are related to any Twitter account, Facebook account, Instagram, or other social media account that are maintained by Borrower and Guarantor or that are in the possession of the following parties and/or contain information about the following subjects:

    1.    Parties: Lender, Borrower, and Guarantor.

    2.    Subject Matters: the Loan Documents including, but not limited to, all underlying negotiations, loan documentation, and the like.

II.    **Data Storage Devices.**

    A.    <u>Online Data Storage.</u> If Borrower and Guarantor use online storage and/or direct access storage devices, they must immediately cease modifying or deleting any electronic data unless a computer forensic expert makes a forensic image of the electronic file or device, follows proper preservation protocols for assuring the accuracy of the file (*i.e.*, chain of custody), and makes the file available for litigation.

5

# Exhibit E

B.    <u>Offline Data Storage.</u> Offline data storage includes, but is not limited to, backup and archival media, floppy diskettes, magnetic, magneto-optical, and/or optical tapes and cartridges, DVDs, CDROMs, mini-secure digital cards, secure digital cards, 8 inch floppy drive, 5.25 inch floppy drive, 3.5 inch floppy drive, LS-120 high capacity floppy drive, USB thumb drive, CD-R, CD-RW, DVD-R, DVD-RW, tape drives, desktop hard drive, external storage hard drive, laptop hard drive, cellphone stored data, smart phone stored data, Blackberry stored data, iPad stored data, iPhone stored data, memory sticks, and/or flash drives, and other removable media. Borrower and Guarantor should immediately suspend all activity that might result in destruction or modification of all of the data stored on any offline media. This includes overwriting, recycling or erasing all or part of the media. This request includes, but is not limited to, media used to store data from personal computers, laptops, mainframe computers, and servers.

C.    <u>Data Storage Device Replacement.</u> If Borrower and Guarantor replace any electronic data storage devices, Borrower and Guarantor may not dispose of the storage devices.

D.    <u>Preservation of Storage Devices.</u> Borrower and Guarantor may not modify, delete or otherwise alter (*i.e.,* by data compression, disk de-fragmentation, or optimization routines) any electronic data unless a computer forensic expert makes a forensic image of the electronic file or device, follows proper preservation protocols for assuring the accuracy of the file *i.e.,* chain of custody), and makes the file available for litigation. The expert must make a forensic image of active files, restored versions of deleted files, and restored versions of deleted file fragments, hidden files, and directory listings. This includes, but is not limited to, preserving electronic data (stored on online or offline storage devices) that came from the following hardware or software applications:

1.    Fixed drives on stand-alone personal computers or laptops;

2.    Network servers and workstations; and

3.    Software application programs and utilities.

## PRESERVATION COMPLIANCE

I.    **Activity Log.** In order to show preservation compliance, Borrower and Guarantor must maintain a log, documenting all alterations or deletions made to any electronic data storage device or any electronic data processing system. The log should include changes and deletions made by supervisors, employees, contractors, vendors, or any other third parties.

II.    **Forensic Images.** Borrower and Guarantor must secure a forensic image copy (a bit-by-bit copy of a hard drive that ensures the computer system is not altered during the imaging process) of all electronic data contained on the personal computers and/or laptops of the individuals listed below. The forensic image should include active files, deleted files, deleted file fragments, hidden files, directories, and any other data contained on the computer. Borrower and Guarantor must also collect and store any offline or online storage

6

# Exhibit E

devices that contain data from any electronic processing devices for the individuals or business entities listed below.

    A.    Lender
    B.    Borrower
    C.    Guarantor

III.    **Chain of Custody.** For each piece of media that Borrower and Guarantor preserve, Borrower and Guarantor must document a complete chain of custody. A proper chain of custody will ensure that no material changes, alterations or modifications were made while the evidence was handled. Chain of custody documentation must indicate where the media has been, whose possession it has been in, and the reason for that possession.

IV.    **Electronic Data Created After This Discovery Preservation Notice.** For any electronic data created after this Discovery Preservation Notice or for any electronic processing systems used after this Discovery Preservation Notice, Borrower and Guarantor must take the proper steps to avoid destroying potentially relevant evidence. This includes following the above preservation protocols.

Compliance with Borrower's and Guarantor's preservation obligations includes forwarding a copy of this Discovery Preservation Notice to all individuals or organizations that are responsible for any of the items referred to in this Discovery Preservation Notice. If this Discovery Preservation Notice is in any respect unclear, please contact us immediately.

Dated: June 19, 2018.            **ANASTASI JELLUM, P.A.**


By: _/s/ Garth G. Gavenda_
    Garth G. Gavenda
    14985 60th Street North
    Stillwater, Minnesota 55082
    Telephone: (651) 439-2951
    Facsimile: (651) 439-1417
    Garth.Gavenda@AJ-Law.com


ATTORNEYS FOR FIRST HOME BANK,
A FLORIDA BANKING CORPORATION